[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1290 
 I.
This is a malicious prosecution case. One of the Plaintiffs sold her shrimping boat on time and repossessed the boat when the buyer failed to pay. Some five months later the dispossessed buyer and another went before a Justice Court Judge and swore out affidavits charging Plaintiffs with two counts of grand larceny, said to relate to disputes over certain equipment on board the boat. The jury held Defendants' actions without rhyme or reason and returned tort verdicts for Plaintiffs. We affirm.
 II. A.
Dorothy Ellis Nicholson, 44, a widow with five children, lives in Bay St. Louis, Mississippi. She owned a shrimp boat named "The Terry." In the Fall of 1984, Nicholson found herself in extremis, charged with a felony under our Controlled Substances Law and was incarcerated in the Hancock County Jail where, it appears from the record, she remained until January 28, 1985, following conviction and service of a brief sentence.
Back in September of 1984, Nicholson's future was uncertain, and she was in great need of funds with which to address her problems with the law. Harold J. Strong, one of the Defendants below and one of the Appellants here, approached Nicholson in jail and offered to buy "The Terry" for $18,500.00. Strong would pay no money down but was to make a first payment of $6,000.00 by November 15, 1984, and was to obtain immediate use of the vessel. Nicholson executed an "As Is" Bill of Sale and, in return, Strong gave a ship mortgage reciting the debt and, of course, giving Nicholson repossession rights in the event of non-payment. *Page 1291 
It is not at all clear that the vessel was seaworthy nor whose fault this was. Nicholson was indisposed at the time and without ability to do much about the vessel's condition; hence, the "As Is" sale. The vessel's equipment included a net, boards, a pump, two dredges, a dredge table, two trawl blocks, a cable and a winch, but much of this equipment was in ill repair. For reasons neither clear nor legally important, "The Terry" sank on Thanksgiving Day.
What is important is that November 15, 1984, came and went, and Strong paid not a penny. Insofar as the record reflects, Strong has never paid Nicholson anything toward his purchase of "The Terry." When it became apparent that Strong's default would continue, Nicholson contacted her brother, Edward Lawrence Ellis, another of the Plaintiffs below and an Appellee here, and asked him to repossess the boat. Ellis approached an Assistant District Attorney who instructed him to "go do it the legal way." Ellis claims this is what he did. Strong does not contest that Nicholson had the right, upon his default in making the November 15 payment, to repossess the vessel and its contents.
To be specific, on December 2, 1984, acting at his sister's instance, Edward Ellis, with George McNeil, a Harrison County Deputy Sheriff and Constable, in tow, approached the vessel which was docked at Henderson Point. At this time, Strong appeared with two other men and removed some personal equipment — clothing, a television set, a shortwave marine radio and a dozen sacks of oysters. Ellis then took possession of the vessel, Strong acquiescing, although he claimed that various items of his property remained onboard. Subsequently, Terryl M. Ladner charged that he, too, had items of personal property onboard "The Terry" and asked Ellis if he might remove them. Ellis refused, saying everything on the boat was staying put until the question of ownership could be settled in court. Ellis secured the boat by placing "No Trespassing" signs on it.
Strong appears to have remained of the view that certain items of personal property belonging to him were still onboard "The Terry." He talked to at least three attorneys to see what he should do. Apparently one told him to file a civil suit. Another advised him to file criminal charges. In the end, on May 16, 1985, without benefit of counsel, Strong and Ladner went before the Clerk of the Justice Court of Hancock County, and each made two affidavits, one charging Nicholson with grand larceny and the other charging Ellis with grand larceny.[1] Strong says his motive was he wanted to get his property back, and he heard Nicholson was going to sell the property. Ladner said he had heard of a newspaper article stating Nicholson was going to sell his property and had been advised by Delbert Seay, an Investigator for the Hancock *Page 1292 
County Sheriff's Department, to file charges. Each admitted that he did not know if Nicholson or Ellis did, in fact, steal the property.
On the night of May 16, 1985, Hancock County Deputy Sheriff Glen Strong — the brother of Defendant Harold J. Strong — arrested Nicholson and Ellis in their homes. Each was taken to jail, booked, fingerprinted, and photographed. Each was then placed in a jail cell and forced to obtain the services of an attorney and to post bond to secure release from custody.
On June 12, 1985, the charges were set before Justice Court Judge Horatio Frierson, apparently for a preliminary hearing. Neither Strong nor Ladner appeared to prosecute the case, and the Justice Court dismissed the charges. Strong later said that he was too busy to come to court.
 B.
On December 13, 1985, Dorothy Ellis Nicholson and Edward Lawrence Ellis commenced this civil action by filing their complaint in the Circuit Court of Hancock County, Mississippi. Nicholson and Ellis named Harold J. Strong and Terryl M. Ladner as Defendants. Nicholson and Ellis sued on alternative tort theories of false imprisonment and malicious prosecution and demanded compensatory and punitive damages.
With all deliberate speed, the case was called for trial. Nicholson and Ellis abandoned their claim of false imprisonment, and the case was submitted to the jury solely upon the theory of malicious prosecution. In due course, the jury returned verdicts for the two Plaintiffs, finding for Nicholson in the amount of $10,000.00 and Ellis in the amount of $20,000.00. The Circuit Court thereupon entered final judgment in favor of Nicholson in the amount of $10,000.00 and against Strong and Ladner, jointly and separately, and, independently, in favor of Ellis in the amount of $20,000.00 and against Strong and Ladner, jointly and severally.
Strong and Ladner timely moved for judgment notwithstanding the verdicts. On February 10, 1988, the Circuit Court denied these motions. This appeal has followed.
 III. A.
Strong and Ladner first argue that the Circuit Court erred when it denied their motions for judgment notwithstanding the verdict.See Rule 50(b), Miss.R.Civ.P. In substance, they charge that the evidence was legally insufficient to sustain judgments against them for the tort of malicious prosecution.
At the outset, we must be clear of our scope of review. When considering the appeal of an issue such as that Strong and Ladner present, we must look at all of the evidence — not just that which supports the Appellees' case — in the light most favorable to Appellees, Nicholson and Ellis. The credible evidence tending to support Appellees' case must be taken as true. Appellees must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Evidence favorable to the Appellants must be disregarded if it is contradicted or its credibility is otherwise called into question. If the facts and inferences, so considered, point so overwhelmingly in favor of the Appellants that reasonable persons could not have arrived at a contrary verdict, we must reverse. On the other hand, if there is substantial evidence supporting the verdict, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the jury verdict and the judgment entered thereon must be allowed to stand, and we, accordingly, have no authority to interfere.
These principles have been stated in cases too numerous to cite. We have enforced them in malicious prosecution cases the same as in any other context where an appellant challenges a jury verdict in a civil action. See, e.g., Benjamin v. HooperElectronic Supply Co., 568 So.2d 1182, 1187 (Miss. 1990); RoyalOil Co., Inc. v. Wells, 500 So.2d 439, 442-43 (Miss. 1986). We do so again today. *Page 1293 
 B.
The substantive contours of the tort of malicious prosecution are well settled. To recover, a plaintiff must show (1) the institution of a criminal proceeding; (2) by, or at the instance of, the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) the plaintiff's suffering of injury or damage as a result of the prosecution. See, e.g., Benjamin v. Hooper Electronic SupplyCo., 568 So.2d at 1188; Parker v. Mississippi Game and FishCommission, 555 So.2d 725, 728 (Miss. 1989); Royal Oil Co.,Inc. v. Wells, 500 So.2d at 442; Woolfolk v. Tucker,485 So.2d 1039, 1043 (Miss. 1986); Owens v. Kroger Co., 430 So.2d 843, 846 (Miss. 1983); and Gandy v. Palmer, 251 Miss. 398, 414,169 So.2d 819, 826 (1964).
To succeed in such an action, a plaintiff must produce evidence of each of these six elements and must persuade the jury on each point that the evidence preponderates in his favor. The proof must be sifted and tested, each element independent of the others, and, on appeal, we must reverse if we find the proof legally insufficient on any one of the six points.
 C.
Nicholson's and Ellis' judgments seem quite secure on elements (1), (2), and (6). Without dispute, Strong and Ladner each brought criminal charges — grand larceny — against Nicholson and Ellis. Without dispute, Nicholson and Ellis suffered some harm, although the quantum thereof is contested, a point we address below. We think it clear as well that the termination element has been satisfied. "The termination requirement is met when the action is either abandoned by the prosecuting attorney or by the complaining witness." Royal Oil Co., Inc. v. Wells, 500 So.2d at 443 (citing cases). Neither Strong nor Ladner appeared in Justice Court when the matter was set on June 12, 1985, and that court promptly dismissed the charges against Nicholson and Ellis. Nothing in the record suggests these charges have ever been resurrected. On these facts, we may only hold that the criminal proceedings Ladner and Strong initiated terminated in Nicholson's and Ellis' favor.
 D.
Strong and Ladner strenuously argue that the evidence was insufficient to make out a jury issue on element (4): "malice in instituting the proceedings." They misperceive the point. Malice does not refer to mean or evil intent, as a layman might ordinarily think. Rather, malice in the law of malicious prosecution is a term used in an artificial and legal sense. It connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice. Benjamin v. HooperElectronic Supply Co., 568 So.2d at 1191; Royal Oil Co., Inc.v. Wells, 500 So.2d at 444; Owens v. Kroger Co., 430 So.2d at 847; State Life Insurance Co. of Indianapolis v. Hardy,189 Miss. 266, 277, 195 So. 708, 713 (1940). As such, it refers to the defendant's objective, not his attitude.
Malice may be and usually is shown by circumstantial evidence. The jury may infer malice from the facts of the case. Benjamin,
568 So.2d at 1191; Royal Oil, 500 So.2d at 444; Owens, 430 So.2d at 847. Malice may be inferred as well from the fact that a defendant may have acted with reckless disregard for the plaintiff's rights. Benjamin, 568 So.2d at 1191.
We find nothing in the record suggesting that either Strong or Ladner, in filing the affidavits charging Nicholson and Ellis with grand larceny, had any purpose or objective of bringing grand larceners to justice. At trial, Strong and Ladner freely conceded their lone purpose was to "get their stuff back." In their brief before this Court, they repeat the point.
 The defendants continually said that all they wanted was to get their equipment and tools back, . . . At one point . . . Harold Strong stated he really didn't care what happened to plaintiffs and that all he wanted was his tools and the equipment back that he had borrowed *Page 1294 
from other people. [Brief of Appellants, p. 11]
Strong and Ladner go on to argue, by way of defense to the charge of malice, that "they did not know of any recourse that [they had other than] the filing of these affidavits . . . against either Ms. Nicholson or Mr. Ellis." [Brief of Appellants, p. 11] At least one attorney Strong consulted advised that a civil action was his proper remedy if in fact Nicholson and Ellis wrongfully retained his property. Strong and Ladner concede:
 We realize that we cannot rely solely upon the suggestion of the Deputy Sheriff that criminal action be brought. [Brief of Appellants, p. 12]
They go on to insist, however, that "they were only trying to protect their property rights." [Brief of Appellants, p. 12] In doing so, they make clear that the jury's verdict on the element of malice is beyond our authority to disturb. Conscientious, informed and fair-minded jurors, given the evidence in this record, could easily have found that, when Strong and Ladner filed the affidavits charging Nicholson and Ellis with grand larceny, Strong and Ladner were each acting primarily for a purpose other than that of bringing grand larceners to justice. On this point, their appeal fails.
 E.
Strong and Ladner also charge the insufficiency of the evidence to establish element (5), "want of probable cause for the proceedings." Here we look to the facts reasonably available to each Defendant at the time he initiated the said-to-be-malicious prosecution. Benjamin, 568 So.2d at 1190; Royal Oil, 500 So.2d at 443; Owens, 430 So.2d at 846. Probable cause requires the concurrence of (1) a subjective element — an honest belief in the guilt of the person accused, and (2) an objective element — reasonable grounds for such beliefs. Benjamin, 568 So.2d at 1190; Royal Oil, 500 So.2d at 443; Harvill v. Tabor,240 Miss. 750, 755, 128 So.2d 863, 865 (1961). The question in the end is not whether the defendant thought he had probable cause, but whether the fact-finder thinks he did. See Holmes, TheCommon Law 140-41 (1881).
Malicious prosecution probable cause analysis resembles negligence law analysis:
. . . the existence of probable cause, which involves only the conduct of a reasonable man under the circumstances, and does not differ essentially from the determination of negligence, usually is taken out of the hands of the jury, and held to be a matter for decision by the court. That is to say, the court will determine whether upon the appearances presented to the defendant, a reasonable person would have instituted the proceeding.
W. Prosser W. Keeton, The Law of Torts § 119 (5th Ed. 1984).
Probable cause here is a function of the offense defendant charged to plaintiff. Here the Defendants Strong and Ladner filed grand larceny charges against Nicholson and Ellis. It was incumbent upon Nicholson and Ellis to prove that Strong and Ladner lacked probable cause to believe that Nicholson or Ellis had committed the crime of grand larceny. We statutorily define grand larceny as the:
 taking and carrying away, feloniously, the personal property of another, of the value of one hundred dollars ($100.00) or more.
Miss. Code Ann. § 97-17-41 (1972). We have long elaborated the statute to mean that, to show one guilty of grand larceny, the prosecution must prove the accused took and carried away, at any time, personal property belonging to another without the owner's consent, under circumstances where the accused was not entitled to possession of the property. The prosecution must also prove that the accused acted feloniously, with intent to deprive the owner of his property permanently and convert it to the use of the accused or someone other than the owner. See Slay v. State,241 So.2d 362, 364 (Miss. 1970); Love v. State, 208 So.2d 755, 756 (Miss. 1968); Crouse v. State, 229 Miss. 15, 23,89 So.2d 919, 922 (1956). While a malicious prosecution plaintiff bears the burden of production and persuasion of showing lack of *Page 1295 
probable cause, proof of lack of probable cause on any one element of grand larceny is sufficient to establish this element of the tort.
In this light, a lack of probable cause is apparent. Strong bought the boat "as is" and knew if he failed to make payments, both the boat and all equipment were subject to repossession. He also knew Nicholson exercised her right to repossess the boat and sent Ellis to carry out the task. Facts further suggest Strong had an opportunity to remove his personal belongings if he proved ownership. Therefore, it seems unreasonable that Strong assumed Nicholson and Ellis committed grand larceny when the boat was seized pursuant to an acknowledged legal right. Ladner stands on equal footing. He maintained he learned that Nicholson and Ellis attempted to sell his personal property through a newspaper article and Strong. When he investigated, he admitted he found no article. Additionally, he admitted at trial he did not know if Nicholson and Ellis stole the property. Thus, he only relied upon Strong to swear out his complaint. Again, this hardly seems reasonable. As such, viewing the evidence most favorably for Nicholson and Ellis it can not be said the evidence was insufficient to sustain the verdict.
 IV.
After considering the merits of the case, the jury returned a verdict awarding $10,000 to Nicholson and $20,000 to Ellis. On appeal, Strong and Ladner submit the Circuit Court should have entered a remittitur as Nicholson and Ellis failed to demonstrate damages in the amounts awarded. In response, Nicholson and Ellis colorfully argue the verdict was not excessive.
The point may be addressed summarily. We have previously noted the difficulty of quantifying a monetary award in malicious prosecution actions. Royal Oil Co., 500 So.2d at 449. Other courts recognize the same problems. See e.g., Dayton HudsonCorp. v. Altus, 715 S.W.2d 670, 674 (Texas Ct.App. 1986) (no certain measure of damages for varying degrees of harm incurred by person who has been maliciously prosecuted; measure of damages usually rests in composite judgment and conscience of jury). The matter is further complicated by the jury's task of placing a monetary figure upon mental anguish and emotional distress, key injuries in malicious prosecution actions. Royal Oil Co., 500 So.2d at 448. See also, Gandy v. Palmer, supra.
In the case at bar, Nicholson risked a sentence to the state penitentiary if found guilty of the offense Strong and Ladner brought. Additionally, it may be inferred that both Nicholson and Ellis suffered some damages resulting from the mental anguish and distress associated with being arrested. The fact that the verdict differed by $10,000 further indicates the jury contemplated Nicholson and Ellis' standing in the community. Suffice to say, we may not reasonably find an abuse of discretion occurred when the Circuit Court denied Defendants' request that the verdicts be reduced.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
[1] The affidavit Strong filed against Nicholson, in full, reads:
THE STATE OF MISSISSIPPI, HANCOCK COUNTY
Before me J.M. Ladner the Justice Court Clerk of the said County, Harold Strong makes oath that Dorothy Nicholson on or about the 15 day of Dec, 1984 did unlawfully wilfully feloniously, take, steal carry away one, 50 Ft. super bib netvalue $850.00, two 3/8 in x 300 ft cable $228, one 16 toothoyster druge (sic) value $275, one set Craftman tools value $150 — the personal property of affiant against the peace and dignity of the State of Mississippi.
/s/ Harold J. Strong
Sworn to and subscribed before me, the 16 day of May, 1985.
/s/ J.M. Ladner Dep
JUSTICE COURT CLERK
The affidavit Strong filed against Ellis, in full, reads:
THE STATE OF MISSISSIPPI, HANCOCK COUNTY
Before me J.M. Ladner the Justice Court Clerk of the said County, Harold Strong makes oath that Edward Ellis on or about the 15 day of Dec, 1984 did unlawfully wilfully,feloniously, take, steal carry away one, 50 ft. super bib net,value $850, two 3/8 in x 300 ft cable $228, one, 16 tooth oysterdruge (sic) value $275, one set Craftman tools value $150 — the personal property of affiant against the peace and dignity of the State of Mississippi.
/s/ Harold J. Strong
Sworn to and subscribed before me, the 16 day of May, 1985.
/s/ J.M. Ladner Dep
JUSTICE COURT CLERK
Ladner made and filed similar affidavits against Nicholson and Ellis.