**Hugh H. McLAURIN, Jr., Plaintiff,**

v.

**Katherine McLaurin WERNER, Defendant.**

**Civ. A. No. 3:92–cv–506WS.**

United States District Court, S.D. Mississippi, Jackson Division.

Sept. 21, 1995.

Peter K. Smith, Peter K. Smith, Attorney, Quitman, MS, Thomas J. Lowe, Jr., Thomas J. Lowe, Jr., Attorney, Jackson, MS, for Hugh H. McLaurin, Jr.

Patrick F. McAllister, Williford, McAllister & Jacobus, Jackson, MS, for Katherine M. Werner.

## ORDER

WINGATE, District Judge.

Before the court is the motion of the defendant for sanctions requesting attorney fees in the amount of $4,391.37 pursuant to

Rule 11 of the Federal Rules of Civil Procedure[1] and 28 U.S.C. § 1927.[2] Having now prevailed in this tort action, defendant contends that plaintiff's contentions were frivolous and meritless from the outset and that plaintiff should be held financially accountable for his baseless lawsuit.

The plaintiff, Hugh H. McLaurin, Jr., (hereinafter "McLaurin"),[3] filed his complaint in the above-styled and numbered cause back on August 20, 1992, seeking $23,000,000.00 in damages from his sister, the defendant in this cause, Katherine McLaurin Werner (hereinafter "Werner"). McLaurin is a resident of Clinton, Mississippi. Werner lives in Dayton, Ohio. McLaurin's complaint invoked this court's jurisdiction under diversity of citizenship, Title 28 U.S.C. § 1332.[4] McLaurin filed this action against his sister, aggrieved over her alleged misconduct in causing a Hinds County Grand Jury to return a criminal indictment against him for grand larceny, which was subsequently dismissed. Count I of McLaurin's complaint sought compensation under the theories of malicious prosecution and intentional infliction of emotional distress. Count II asserted that defendant Werner had engaged in outrageous conduct calculated to cause McLaurin emotional distress.

According to the Report and Recommendation of the United States Magistrate Judge filed in this case on April 23, 1993, after filing his complaint in this court, McLaurin failed to respond to Werner's discovery requests; failed to comply with the orders of the Magistrate Judge directing McLaurin to respond to Werner's discovery requests; and failed to pay $250.00 in sanctions imposed upon him for his failures to respond as directed.[5] Furthermore, according to the Report and Recommendation, McLaurin was informed by the Magistrate Judge on March 19, 1993, that failure to comply with the orders of the court by March 29, 1993, would result in a recommendation of dismissal pursuant to

1. Rule 11 was substantially amended in 1993. The effective date of those amendments was December 1, 1993, and the amended rule is not retroactive. *See Childs v. State Farm Mutual Automobile Insurance Company*, 29 F.3d 1018 (5th Cir.1994). Therefore, the instant motion for sanctions is governed by the provisions of the former version of Rule 11 of the Federal Rules of Civil Procedure which provides:

Every pleading, motion, and other paper of a party represented by an attorney shall be signed by at least one attorney of record in the attorney's individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the party's pleading, motion, or other paper and state the party's address. Except when otherwise specifically provided by rule or statute, pleadings need not be verified or accompanied by affidavit. The rule in equity that the averments of an answer under oath must be overcome by the testimony of two witnesses or of one witness sustained by corroborating circumstances is abolished. The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper, that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

2. Title 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

3. It is undisputed that McLaurin is an attorney and has been a member of the Mississippi Bar.

4. Title 28 U.S.C. § 1332(a) provides in pertinent part:

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between—
(1) citizens of different States; ...

5. This sanction eventually was paid on December 30, 1993.

Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure.[6] McLaurin made no response as directed, so the Magistrate Judge entered a recommendation of dismissal. The Report and Recommendation was adopted by this court which entered judgment in favor of Werner on June 29, 1993. Thereafter, Werner moved for the imposition of sanctions and filed the instant motion, citing both Rule 11 of the Federal Rules of Civil Procedure and Title 28 U.S.C. § 1927.

## BACKGROUND

This dispute is just another skirmish in the ongoing war between a brother and sister over the assets of their deceased mother's estate. McLaurin's dismissed malicious prosecution action had its genesis in a disagreement over the ownership of an antique bed and dresser valued at between $10,000.00 and $15,000.00 which was part of the household of Lucy J. McLaurin, deceased, the mother of the parties. Werner, the defendant in the malicious prosecution action, says that she was appointed trustee of the Lucy J. McLaurin Trust (hereinafter the "Trust") in January of 1988 and subsequently became the executrix of her mother's estate after her mother's demise in February of 1990. Prior to the demise of Lucy J. McLaurin, Werner says she advised her brother McLaurin, the plaintiff in this cause, that any property of Lucy J. McLaurin in the possession of McLaurin should be turned over to Werner under the terms of the Trust established by Lucy J. McLaurin and her Conservatorship (hereinafter the "Conservatorship"). This notice, says Werner, was sent to McLaurin by certified mail.

In August, 1990, Werner says she became aware that McLaurin had removed the antique bed and dresser from the residence of Lucy J. McLaurin and had sold the property to an antique dealer in Greenwood, Mississippi. Werner contends that the bed and dresser should have been part of her mother's estate. McLaurin responds that the bed and dresser were given to him by his mother five years prior to her death. McLaurin's attorney, Thomas J. Lowe, Jr., submits an affidavit wherein he states that McLaurin has witnesses who can establish McLaurin's claim to the bed and dresser.

At the time McLaurin removed the antique bed and dresser, says Werner, McLaurin had filed lawsuits against Werner challenging the Conservatorship of Lucy J. McLaurin; the creation of the Trust for the benefit of Lucy J. McLaurin; and the creation of a testamentary spendthrift Trust for McLaurin's benefit to become effective following Lucy J. McLaurin's death. Additionally, says Werner, following the death of Lucy J. McLaurin, McLaurin challenged Lucy J. McLaurin's Last Will and Testament (hereinafter the "Will"). It was McLaurin's attorney in the case *sub judice*, Thomas J. Lowe, Jr., says Werner, who filed each of McLaurin's prior actions challenging the Conservatorship, the Trust, and the Will.[7]

With regard to the court dispute over the Will, Werner says that she filed a counterclaim against her brother in her capacity as executrix of her mother's estate. The counterclaim, says Werner, sought damages against McLaurin for the value of assets that he allegedly had taken earlier from Lucy J. McLaurin through undue influence. All of the aforementioned Chancery Court actions, says Werner, were consolidated for trial by jury by the Hinds County Chancery Court. After a jury trial, says Werner, the Chancery Court held that the Will and Trust of Lucy J. McLaurin were valid documents. Additionally, says Werner, the jury awarded the Lucy J. McLaurin Estate a judgment against McLaurin in the amount of $230,000.00. Ac-

---

**6.** Rule 37(b)(2)(C) provides in pertinent part:

If a party ... fails to obey an order to provide or permit discovery, ..., the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(C) An order ..., dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

**7.** According to Lowe's affidavit submitted in response to Werner's motion for sanctions, Lowe says that he and McLaurin dissolved their attorney-client relationship at some time during the litigation in Hinds County Chancery Court. Lowe says McLaurin hired other counsel to pursue the case, fired his new counsel, then attempted to hire Lowe again. Lowe says he chose not to accept reemployment in the Chancery Court matter.

cording to Werner, the judgment against McLaurin, however, is uncollectible since he has no assets.

Upon learning that McLaurin had removed and sold the bed and dresser, Werner says she directed her attorney to contact the Hinds County District Attorney's Office. Werner says the purpose of this contact was to inform the District Attorney of McLaurin's action because she thought it might constitute a violation of criminal law in Mississippi. According to the affidavit of the Assistant District Attorney Robert Taylor, Werner was told to give her brother the opportunity to explain his actions prior to her pursuit of any criminal charges. In his affidavit, Taylor says he directed Werner to ask McLaurin to provide her an explanation about the bed and dresser and to request that McLaurin return the items to the estate. Werner says she told the Assistant District Attorney that McLaurin would not return the items and would claim that Lucy J. McLaurin had given him the bed and dresser prior to Lucy J. McLaurin's death.

Nevertheless, acting on the advice of the Assistant District Attorney, Werner says she informed McLaurin by certified mail of her belief that the bed and dresser were assets of their mother's estate and that McLaurin should return the items to the estate. Werner says she told McLaurin that failure to return the items could constitute a criminal act which would be reported to the authorities if McLaurin failed to provide a reasonable explanation for his actions. Werner says McLaurin did not respond.

After McLaurin failed to respond, Werner says the Assistant District Attorney presented the matter to the Hinds County Grand Jury. Werner says she testified before the Hinds County Grand Jury that she believed the bed and dresser were assets of her mother's estate and that McLaurin had taken and sold them. The Assistant District Attorney, says Werner, advised the grand jurors that McLaurin would likely testify that the bed and dresser had been given to him by his mother as a gift and, further, that it was possible McLaurin would produce witnesses to support his story. Notwithstanding the Assistant District Attorney's caveat to the grand jury that McLaurin might have a defense, the grand jury voted to indict McLaurin on a charge of grand larceny.

McLaurin, on the other hand, says Werner knew when she testified before the Hinds County Grand Jury that the bed and dresser belonged to McLaurin and had been given to him by his mother, Lucy J. McLaurin, at least five years prior to her death. McLaurin claims that Werner knew that the charges of grand larceny were false, but that Werner lied to the Hinds County Grand Jury in order to have McLaurin indicted. McLaurin says Werner did this in retaliation for the civil lawsuits McLaurin had filed against Werner and the estate of their mother. McLaurin further contends that Werner certainly learned after the indictment that the bed and dresser actually indeed did belong to McLaurin, but, according to McLaurin, Werner took no steps whatsoever to have the prosecution discontinued.

Werner responds in her August 9, 1993, affidavit filed in conjunction with her motion for sanctions in this court, inter alia, that the terms of her mother's Will establish that McLaurin was not entitled to the bed and dresser. According to the terms of the Last Will and Testament of Lucy J. McLaurin, all tangible and personal property owned by Lucy J. McLaurin at the time of her death were to be Werner's absolutely with the exception of a Chrysler automobile left to Andrew Werner and certain personal property used in connection with a trailer park. This document was signed by Lucy J. McLaurin on February 1, 1988.

However, this court recognizes that the Will does not establish conclusively that the bed and dresser belonged to Werner at the time Werner undertook to initiate criminal proceedings against her brother. This is so because if McLaurin's assertion that his mother gave him the bed and dresser five years prior to her death is correct, then the bed and dresser would not have been in his mother's possession at the time the Will was executed.

Still, as further evidence of her good-faith belief in McLaurin's wrongful taking of the bed, Werner notes that McLaurin had failed

to assert his ownership of the bed and dresser in question on two official occasions—when he gave a deposition in the Will dispute litigation and when he listed his assets owned since 1985 in support of his bankruptcy petition.

After McLaurin was indicted, the Hinds County Chancery Court returned its verdict in favor of Werner and her mother's estate in the Will contest above discussed. The parties agree that the criminal action against McLaurin was discontinued through a *nolle prosequi* by the Hinds County District Attorney in May of 1992.

### THIS LAWSUIT

In August of 1992, McLaurin filed a complaint contending that Werner had caused the Hinds County Grand Jury indictment on charges of grand larceny to be brought against him for removal and sale of the bed and dresser, notwithstanding that Werner knew the charges were false. Werner denied these assertions in her answer.

Additionally, after McLaurin's complaint was filed, Werner's attorney cautioned Thomas J. Lowe, Jr., counsel for McLaurin, by certified letter dated September 10, 1992, that Werner did not believe the complaint to be well-founded in fact. Werner says her attorney provided Lowe a detailed factual basis supporting her assertion that the complaint was frivolous. However, says Werner, Lowe never responded to the letter. Thus, says Werner, she began her defense to McLaurin's complaint, at all times announcing the charges against her to be utterly frivolous.

For whatever reason, McLaurin and his attorney failed to submit timely responses to Werner's discovery requests filed October 8, 1992. Werner moved to compel McLaurin's response and was awarded sanctions against McLaurin by the Magistrate Judge in the amount of $250.00 on December 4, 1992. McLaurin still did not respond. Werner moved to have McLaurin declared in contempt of court on December 23, 1992. McLaurin was directed to respond to discovery requests and pay the court-levied sanction by March 29, 1993. McLaurin did not respond or otherwise go forward with the instant litigation. His attorney says this was due to McLaurin's ill health and lack of funds. Ultimately, McLaurin's failure to respond to Werner's initial discovery requests and his failure to pay the $250.00 sanction when directed to do so led to the Magistrate Judge entering his Report and Recommendation on April 26, 1993, recommending dismissal of this cause pursuant to Rule 37(b)(2)(C) [8] of the Federal Rules of Civil Procedure due to the willful failure of McLaurin to comply with the orders of the court. This court entered a judgment approving the Report and Recommendation of the Magistrate Judge and dismissing the complaint with prejudice on July 26, 1993.

■ One of the reasons for this court's acceptance of the Magistrate Judge's recommendation was McLaurin's failure to respond to Werner's request for admissions. This request asked McLaurin to admit, among other things, that Werner never signed a criminal affidavit against McLaurin; that McLaurin filed for bankruptcy on February 6, 1990, but did not claim the bed and dresser as assets of his bankruptcy estate; that there was no document supporting McLaurin's contention that the bed and dresser belonged to McLaurin; that McLaurin received a letter from Werner prior to his indictment requesting information concerning the sale of the bed and dresser which advised McLaurin that the failure to provide a reasonable explanation as to the removal and sale of the bed and dresser would result in Werner advising the appropriate authorities of the potential criminal act; that McLaurin made no response to Werner's letter; and that Werner had probable cause to believe that the bed and dresser had been wrongfully removed and sold. Because of McLaurin's failure to answer, this court was compelled to accept Werner's statements contained in her request for admissions as true. Under Rule 36(a) of the Federal Rules of Civil Procedure, the subject of a request for admission "is admitted unless, within 30 days after service

---

**8.** Ignoring orders for sanctions for failure to respond to discovery will result in dismissal of one's complaint. *Vela v. Western Electric Company,* 709 F.2d 375 (5th Cir.1983).

of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admissions a written answer or objection addressed to the matter, signed by the party or by the party's attorney...." *See Dukes v. South Carolina Insurance Company,* 770 F.2d 545 (5th Cir. 1985). So, by his failure to respond to Werner's request for admissions, McLaurin admitted that Werner had acted properly when she reported to the Assistant District Attorney that she feared the bed and dresser in question had been wrongfully removed and sold. McLaurin also admitted that he had been indicted by a Grand Jury based upon the recommendation of the Assistant District Attorney, and not because Werner had filed a criminal affidavit against McLaurin.

As earlier stated, at the time this court adopted the Magistrate Judge's Report and Recommendation there was nothing in the record before this court to show that McLaurin had ever responded to Werner's request for admissions. However, at this court's last hearing on this matter, counsel for Werner informed this court that McLaurin's counsel had mailed to Werner's counsel a response to Werner's request for admissions. However, this response was never filed with the Clerk of the Court.

Rule 5(d) of the Federal Rules of Civil Procedure provides that, "[a]ll papers after the complaint required to be served upon a party, ..., shall be filed with the court either before service or within a reasonable time after service, but the court may ... order that depositions upon oral examination and interrogatories, requests for documents, requests for admissions, and answers and responses thereto not be filed...." Additionally, Uniform Local Rule 6(e)(1) states that, "[p]ursuant to the provisions of Rule 5(d), Federal Rules of Civil Procedure, depositions in civil cases shall no longer be initially filed with the Clerk of the Court." Inasmuch as this local rule refers only to depositions not being filed with the Clerk of the Court, it follows that all other documents listed in Rule 5(d) must be filed. McLaurin's counsel did not file his response.

Accordingly, McLaurin's unfiled response mailed to Werner's attorney was, therefore, ineffective. Because the response was ineffective, the statements contained in Werner's request for admissions must be deemed admitted. *Saulsberry v. Atlantic Richfield Company,* 673 F.Supp. 811 (N.D.Miss.1987).

## DEFENDANT'S CLAIM FOR SANCTIONS

Werner's motion for sanctions was filed August 9, 1993. Werner claims that she is entitled to sanctions in the amount of $4,391.37, the total amount of attorney fees she incurred in defending this action. Werner's claim for attorney fees is based upon her contention that McLaurin's lawsuit against her was at all times wholly frivolous. Werner argues that McLaurin could not prevail in this action unless he was able to show the following: "(1) the institution of a criminal proceeding; (2) by, or at the instance of, the defendant; (3) termination of such proceeding in plaintiff's favor; (4) malice in instituting proceeding; (5) want of probable cause for the proceeding; and (6) the plaintiff's suffering of injury or damage as a result of the prosecution." *Strong v. Nicholson,* 580 So.2d 1288, 1293 (Miss.1991). To prevail, says Werner, McLaurin was obligated to produce evidence on all six elements of malicious prosecution by a preponderance of the evidence. *Id.* at 1293.

Werner claims that she had overwhelming probable cause for the institution of criminal proceedings against McLaurin. Probable cause, of course, requires the concurrence of (1) a subjective element—an honest belief in the guilt of the person accused, and (2) an objective element—reasonable grounds for such beliefs. *Id.* at 1294. Relying on her affidavit dated August 9, 1993, which was submitted with her motion for sanctions, Werner contends that she had good reason based on her mother's Will, the lack of any document supporting McLaurin's claim to the bed and dresser, and McLaurin's bankruptcy testimony, for an honest belief that McLaurin may have committed a crime in removing and selling the bed and dresser.

Werner says she also relied on McLaurin's deposition given on February 9, 1990, in the

trust and estate litigation pending between the parties. In this deposition, Werner notes, McLaurin testified that the only personal property he owned as of February 9, 1990, consisted of a 1981 Volkswagen automobile, some office equipment, a computer, a handgun or two, the clothes on his back, and an interest in a mobile home. McLaurin's deposition testimony, says Werner, is contrary to the allegations in his complaint that he had owned the antique bed and dresser for at least five years prior to Mrs. McLaurin's death. Werner says she still believes her brother wrongfully removed and sold the bed and dresser.

Furthermore, argues Werner, McLaurin, as a member of the Mississippi Bar, knew, or should have known, that the removal of the contents of the decedent's residence without the express approval of Werner, as executor for Lucy J. McLaurin, was improper until a determination of his claim of ownership was considered and ruled upon by the Chancery Court of Hinds County, citing *State Farm Fire & Casualty Company v. Magee*, 368 So.2d 230 (Miss.1979), and *Deposit Guaranty National Bank v. McBeath*, 204 So.2d 863 (Miss.1967). Each of these cases holds that it is the duty of the administrator of an estate to ascertain and collect the assets of the estate, ascertain debts of the estate, and to liquidate the affairs of the estate, distributing the residue to the persons entitled to it.

### PLAINTIFF'S RESPONSE

#### McLaurin's Contentions

In his affidavit submitted in response to Werner's motion for sanctions, McLaurin says he was in ill health at all times pertinent to this action. McLaurin says he was taking blood thinner medication for a heart condition; that his sister knew this and knew that she could cause McLaurin physical harm; that Werner had McLaurin ejected from his mother's house; and that Werner would stop at nothing to gain control of her mother's estate.

The affidavit submitted by McLaurin's attorney, Thomas J. Lowe, Jr., says that it was Lowe who advised McLaurin to bring this malicious prosecution action against his sister. According to Lowe, Werner misused the criminal court system in order to obtain a favorable judgment in the Chancery Court of Hinds County. Lowe says that he learned from others that Werner and her husband may have suffered financial setbacks in the past which motivated them to fight for control of Lucy J. McLaurin's estate. Lowe says he believes that the criminal charges were merely an attempt to force McLaurin, a man in ill health, to submit to Werner's demands. Lowe claims that he received an offer from Werner's attorney after Werner received her favorable judgment in Chancery Court that the judgment would be forgiven and the criminal matter dropped if McLaurin would not appeal the Chancery Court judgment. According to Lowe, the criminal charge was nothing more than a bargaining chip in the long and bitter dispute between McLaurin and Werner.

At one of the several hearings conducted by this court regarding this matter, McLaurin's attorney, Lowe, informed this court that he had a videotape of testimony of the witnesses whose testimony would confirm McLaurin's rightful possession of the bed and the frivolity of Werner's resort to criminal proceedings. This court reviewed this videotape but is unable to conclude that it has any bearing on whether Werner acted improperly when she took steps to initiate criminal proceedings against McLaurin. The videotape presents the statements of Mary Womack and Ellen McLaurin. They opine that the bedroom set in question belonged to Hugh McLaurin, based upon their conversations with Lucy McLaurin. Their opinions are subject to attack. Moreover, no one contends that Werner ever was shown this videotape or was apprised of its contents prior to the time Werner informed the Assistant District Attorney Robert Taylor that McLaurin had removed and sold the bed and dresser. As noted previously, Werner, acting on advice of the Assistant District Attorney, gave McLaurin ample opportunity to provide a reasonable explanation for his actions. McLaurin should have been able to supply at that time the videotape or affidavits of his witnesses in support of his actions, but he did not. Significantly, it was only after McLaurin failed to respond to Werner

that the matter was submitted by the Assistant District Attorney to the Hinds County Grand Jury.

Finally, Lowe's affidavit says he drafted a motion to dismiss this cause due to his client's fragile health and financial inability to pursue the litigation. McLaurin even signed a letter authorizing dismissal, says Lowe's affidavit. But, the motion was not filed. Then, in July of 1993, Lowe says he was diagnosed with a severe case of depression which has caused him to withdraw from the active practice of law.

■■■ Under Mississippi law, termination of criminal proceedings in favor of a defendant may give that defendant the right to proceed with a malicious prosecution suit, *Gaylord's of Meridian v. Sicard*, 384 So.2d 1042 (Miss.1980). A criminal proceeding is terminated in one's favor when a formal *nolle prosequi* is entered, *Pugh v. Easterling*, 367 So.2d 935, 938 (Miss.1979). However, as Werner has noted, McLaurin additionally must prove by a preponderance of the evidence, malice in instituting the proceeding; want of probable cause for the proceeding; and injury or damage as a result of the prosecution. *Strong*, 580 So.2d at 1293. The matters now deemed admitted undermine any argument McLaurin may raise regarding Werner's malice, lack of probable cause or injury. Moreover, Werner has submitted her affidavit and other documents to support her claim that she had sufficient probable cause to form an honest belief that her brother had committed a criminal act. According to Werner's affidavit, she remains steadfast in that belief. An honest belief in the guilt of a person and reasonable grounds for such belief will support the finding of sufficient probable cause to overcome a charge of malicious prosecution. *Page v. Wiggins*, 595 So.2d 1291, 1294 (Miss.1992); *Strong*, 580 So.2d at 1294.

### THE MATTER OF SANCTIONS

In the instant case, this court finds that McLaurin filed this complaint against Werner in response to an unfavorable decision in the matter of the estate of Lucy J. McLaurin

founded only upon the *nolle prosequi* of his criminal indictment and with no proof of either malice or want of probable cause. Furthermore, this court finds that McLaurin and his attorney refused to dismiss this complaint after receiving notice from Werner's attorney through a letter dated September 10, 1992. Due process does not require that notice be given to the offending party in every instance before a court can impose sanctions under Rule 11. *Harmony Drilling Company, Inc. v. Kreutter*, 846 F.2d 17, 19 (5th Cir.1988). Giving the party charged with violating Rule 11 a chance to respond to the charges through submission of a brief is usually all that due process requires. *Veillon v. Exploration Services, Inc.*, 876 F.2d 1197, 1202 (5th Cir.1989). McLaurin has been afforded all process that was due in the instant case.

Werner seeks sanctions under both Rule 11 and 28 U.S.C. § 1927. Rule 11 involves mandatory sanctions once a violation is found, while 28 U.S.C. § 1927 leaves the decision whether to impose sanctions to the discretion of the district court. *Topalian v. Ehrman*, 3 F.3d 931, 936 n. 5 (5th Cir.1993). The Fifth Circuit recently addressed the district court's sanction powers under Rules 11, 26(g) and 37 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927 and adopted the position that, "although conduct that violated one rule may not warrant the same type or amount of sanction as conduct that violates another rule, we think the underlying principles elucidated in *Thomas*[9] in the context of Rule 11 apply across-the-board to all of the district court's sanction powers." *Topalian*, 3 F.3d at 936 n. 5.

■■■ The principles set forth by the Fifth Circuit in *Thomas v. Capital Securities Services, Inc.*, 836 F.2d 866 (5th Cir.1988), govern this court's analysis of the question of sanctions. When one signs a pleading, such as the complaint in the instant case, the signature certifies, among other things, that it is not interposed for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. *Thomas*, 836 F.2d at 873–74. Rule 11 of the Federal Rules of Civil Proce-

---

**9.** *Thomas v. Capital Securities Services, Inc.,* 836    F.2d 866 (5th Cir.1988).

dure requires that every paper signed and filed during the course of proceedings be well-grounded in fact and warranted by law. Under the "snapshot" rule set forth in *Thomas,* the court must not rely upon hindsight. It should focus instead upon what the signer of the pleading objectively knew when the papers in question were signed and ask whether, at the time they were signed, the papers violated the Rule 11 standard of good faith. *Jennings v. Joshua Independent School District,* 877 F.2d 313, 320 (5th Cir. 1989). It is not necessary to find that a pleading was filed for an improper purpose in order to find a Rule 11 violation for failure to conduct the reasonable inquiries into the facts and law required by Rule 11. *Robinson v. National Cash Register Co.,* 808 F.2d 1119, 1130 (5th Cir.1987). However, Rule 11 focuses on the instant when the attorney's signature was placed upon the document or documents giving rise to the motion for sanctions. In determining whether a violation has occurred, the court must consider the factual and legal situations which confronted the attorney at the time of the alleged violation. Only when a violation is established does Rule 11 mandate the application of sanctions. *Thomas,* 836 F.2d at 874–877. In order to comply with his duties under Rule 11, one need not provide an absolute guarantee of the correctness of one's legal theory advanced in one's pleading. *Smith v. Our Lady of the Lake Hospital,* 960 F.2d 439, 444 (5th Cir.1992), citing *City of El Paso v. City of Socorro,* 917 F.2d 7, 8 (5th Cir.1990). However, it is necessary that the signer certify that he has conducted reasonable inquiry into the relevant law.

■ Review of the record reveals three documents signed by McLaurin's attorney, Thomas J. Lowe—the complaint, a motion for an extension of time to reply to Werner's motion for sanctions, and Lowe's affidavit in response the motion for sanctions. Only McLaurin's complaint is subject to this court's Rule 11 scrutiny. At the time McLaurin filed his malicious prosecution complaint, he had obtained a termination of the proceeding in his favor by *nolle prosequi.* However, this court must conclude from all of the evidence that McLaurin was in no position to prove the other vital elements— that the criminal charge was brought at the instance of Werner with malice and with no probable cause. When McLaurin filed his malicious prosecution complaint, he full well knew what facts upon which Werner had relied in seeking an indictment. Moreover, Werner had given him every opportunity before resorting to criminal proceedings to address those concerns. McLaurin furthermore should have known that the facts relied upon by Werner could raise serious doubts about his legal entitlement to the bed. Obviously so, since a Hinds County Grand Jury had been impressed enough with these facts to vote an indictment against McLaurin. McLaurin's admissions, as well as his subsequent stalling approach to the prosecution of the malicious prosecution suit show that his complaint lacked good faith underpinnings from the start. Thus, this court concludes from all the foregoing that McLaurin's malicious prosecution action was frivolous from the outset, and that sanctions should be imposed.

■ This court considers four factors in determining what sanction to impose: (1) what conduct is being punished or is sought to be deterred by the sanction; (2) what expenses or costs were caused by the violation of the rule; (3) were the costs or expenses "reasonable," as opposed to self-imposed, mitigatable, or the result of delay in seeking court intervention; and (4) whether the sanction imposed the least severe sanction adequate to achieve the purpose of the rule under which it was imposed. *Topalian v. Ehrman,* 3 F.3d 931, 936–37 (5th Cir.1993). In the instant case, McLaurin filed a frivolous complaint, certainly an action which should be deterred by imposition of sanction. As a result of McLaurin's filing his complaint, Werner had incurred reasonable attorney fees in the amount of $4,391.37. This court finds that awarding Werner her reasonable attorney fees incurred is an appropriate sanction under the circumstance of this case which should serve to achieve the purpose of Rule 11. Furthermore, this is the sanction this court in its discretion finds appropriate to impose pursuant to Title 28 U.S.C. § 1927.

**SO ORDERED AND ADJUDGED.**