# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-IA-00892-SCT

*THE UNIVERSITY OF MISSISSIPPI MEDICAL CENTER, SYRONE McBEATH AND DAVID STEWART*

*v.*

*ENOCH OLIVER*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/07/2016 |
| TRIAL JUDGE: | HON. WINSTON L. KIDD |
| TRIAL COURT ATTORNEYS: | EVERETT T. SANDERS |
| | LYDIA ROBERTA BLACKMON |
| | ROBERT V. GREENLEE |
| | THOMAS EUGENE WHITFIELD, JR. |
| | JOHN T. KITCHENS |
| | KELLY HARDWICK |
| | MARK D. RAY |
| | SIMINE BAZYARI REED |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | THOMAS EUGENE WHITFIELD, JR. |
| | ROBERT V. GREENLEE |
| ATTORNEYS FOR APPELLEE: | LYDIA ROBERTA BLACKMON |
| | EVERETT T. SANDERS |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND RENDERED - 08/24/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., KING AND MAXWELL, JJ.**

**MAXWELL, JUSTICE, FOR THE COURT:**

¶1. This is an interlocutory appeal of the denial of summary judgment. The circuit court ruled Enoch Oliver could proceed to trial with his malicious-prosecution claim against University of Mississippi Medical Center (UMMC) and two of its law-enforcement officers, Syrone McBeath and David Stewart. But after de novo review, we disagree.

¶2. As a matter of law, malice-based torts do not fall under the Mississippi Tort Claims Act's sovereign-immunity waiver. So Oliver has no malicious-prosecution claim against UMMC or its employees in their *official* capacity. Oliver also brought malicious-prosecution claims against the UMMC officers in their *individual* capacity. But the record shows Oliver failed to put forth any evidence the officers acted with malice or lacked probable cause.

¶3. We thus reverse the circuit court's denial of summary judgment and render a final judgment in the defendants' favor.

## Background Facts and Procedural History

### I. Confrontation with Officers

¶4. On the morning of January 16, 2008, Officer Deficio Stoglin responded to a domestic-violence call at UMMC's Wiser Hospital for Women and Infants. The nurses told Stoglin they heard loud shouting in Room 310 and then saw Oliver storm out. Stoglin entered the room to interview Oliver's wife, who had just given birth. According to Stoglin, Oliver's wife was visibly upset. She also had a black eye. The wife claimed Oliver had given her the black eye before she went to the hospital. But she did admit that "he definitely hit her with his hands." Stoglin radioed to the other UMMC officers to be on the lookout for a man matching Oliver's description leaving Garage B. Officer Stoglin remained with Oliver's

2

wife, further investigating her domestic violence allegations. Instead of going home after her release from the hospital, she told Stoglin she planned to go to a hotel, because "she does not want [Oliver] near her or her children."

¶5. Officer Charlene Burfield was in Garage B when she heard Stoglin's dispatch. She immediately noticed a man matching the suspect's description trying to exit the garage. She stopped Oliver's van and asked him who he had been visiting. When Oliver said "Room 211," she asked him if he was sure. Oliver backtracked and said, "No, 310 in the Wiser." Burfield then asked him to pull behind her vehicle. At this point, Officer Cecil Lott drove up, blocking Oliver's van from behind. Lott approached Oliver's van and asked him to get out.

¶6. Officers Andre Watson and David Stewart also responded to Stoglin's dispatch. According to Watson, Oliver shouted at Lott and Burfield, "What the hell do you want, you ain't the police." Several times, Lott and Burfield ordered Oliver to exit the van, but he refused. When Oliver did not comply, Lott, Watson, and Stewart tried unsuccessfully to pull Oliver out of the van. That did not work either, so Officer Lott "pepper sprayed" Oliver. In response, Oliver pulled a pistol from behind his back and pointed it at Officer Lott's face. Lott ducked. And Watson screamed "gun," hit Oliver, disarming him, and pulled him out of the vehicle.

¶7. After the officers handcuffed Oliver, Officer Burfield approached the van and found a loaded .40-caliber Smith and Wesson handgun on the driver's seat. Lott escorted Oliver to UMMC's emergency room for burn treatment from the pepper spray. Officer Lott then

3

took Oliver to UMMC's police headquarters to fill out an arrest report. Oliver was later transferred to the Hinds County jail.

## II. Criminal Charges

¶8. That day, Oliver was charged with three misdemeanors—disorderly conduct for failure to comply with the commands of a police officer, resisting arrest, and carrying a concealed weapon.[1] UMMC Investigator Syrone McBeath was assigned to investigate potential felony charges. McBeath reviewed Stoglin's, Lott's, Burfield's, and Watson's officer reports.[2] Based on his review of the officers' statements—which all corroborated the fact Oliver pulled a gun on Officer Lott—and the fact they recovered a gun from Oliver's van, McBeath concluded Oliver had committed felony assault on a police officer. *See* Miss. Code Ann. § 97-3-7 (Rev. 2014). He presented this evidence to a county court judge, who issued an arrest warrant on January 17, 2008.

¶9. On February 7, 2008, Officer Lott transported Oliver to the Hinds County Justice Court for trial. According to Officer Lott, the justice-court judge dismissed the charges, reasoning the officers "had no legal right to stop and question Enoch Oliver about a domestic violence complaint since [the officers] did not arrest him on that charge." *But see* **Floyd v. City of Crystal Springs**, 749 So. 2d 110, 114 (Miss. 1999) (holding an officer may stop a suspect for questioning if the officer has reasonable suspicion the suspect was involved in

---

[1] *See* Miss. Code Ann. § 97-35-7 (Rev. 2014) (disorderly conduct); Miss. Code Ann. § 97-9-73 (Rev. 2014) (resisting arrest); Miss. Code Ann. § 97-37-1 (Rev. 2014) (carrying a concealed weapon).

[2] Though Investigator McBeath usually interviewed suspects personally, he did not here because Oliver invoked his Fifth Amendment right to remain silent.

4

a felony); *see also **Qualls v. State***, 947 So. 2d 365, 372-73 (Miss. Ct. App. 2007) (holding that, because officer had reasonable suspicion to make an investigatory stop, suspects' failure to comply with officer's commands provided probable cause to arrest suspects for disorderly conduct and resisting arrest).

¶10.    McBeath's investigation led to a felony charge being presented to the grand jury, which indicted Oliver on April 30, 2008, for felony assault of a law-enforcement officer. But on October 14, 2009, the Hinds County Circuit Court, First Judicial District, entered an order of *nolle prosequi* on that charge. According to the State, it could not meet its burden on all required elements of aggravated assault. The State reasoned in the order that it could prove, at most, Oliver pointed a gun at the officers. Citing ***Gibson v. State***, 660 So. 2d 1268 (Miss. 1995), the State did not believe this act constituted an aggravated assault. According to the State, pointing a gun at a police officer merely supports a charge of simple assault. But the State neglected to point out that, under Mississippi Code Section 97-3-7(1)(b), assault on a law-enforcement officer is an aggravating circumstance, making an otherwise simple assault a felonious aggravated assault. *See **Hitt v. State***, 988 So. 2d 939, 941 (Miss. Ct. App. 2008) (noting the enhanced penalty for simple assault on a law-enforcement officer). So, contrary to the faulty reasoning in its *nol-pros* order—which the circuit judge signed and entered—the State's ability to prove Oliver pointed a pistol at Officer Lott's face *was* sufficient to prove felony assault.

¶11.    The *nol-pros* order also was incorrect in another material respect. According to the written order, the State could not prove simple assault because "this case is premised on three

5

underlying offenses," which "were dismissed on February 7, 2008, before Oliver was indicted on April 30, 2008." But there is no requirement under Section 97-3-7(1)(a) that any underlying offenses be committed to prove simple assault.

### III. Complaint

¶12. On July 20, 2010—nine months after the court signed the State's *nol-pros* order dismissing his felony charge and two-and-a-half years after the incident in Garage B—Oliver filed a complaint in Hinds County Circuit Court, First Judicial District. He named as defendants UMMC, Investigator McBeath, and Officers Burfield, Lott, Watson, and Stewart. He alleged the officers "at times" were acting within the course and scope of their employment with UMMC, making UMMC vicariously liable. He also insisted that "[a]t other times," these defendants acted outside the course and scope of their employment and thus were individually liable. Oliver brought claims of negligence, gross negligence, negligence *per se*, defamation/libel, invasion of privacy, negligent/intentional infliction of emotional distress, assault, battery, false imprisonment, false arrest, and malicious prosecution based on both the misdemeanor charges and the felony charge.

¶13. UMMC, McBeath, and Stewart were served with process, but Lott, Burfield, and Watson were not. UMMC, McBeath, and Stewart filed a motion to dismiss, which was joined by the unserved defendants, who specially appeared. The unserved defendants requested dismissal for Oliver's failure to serve them with process. The served defendants argued Oliver's claims were governed by the Mississippi Tort Claims Act (MTCA) and its one-year statute of limitations. *See* Miss. Code Ann. § 11-46-11(3)(a) (Rev. 2012). Thus,

6

they asserted Oliver's claims were time-barred. The lone exception was the malicious prosecution of the felony claim, because the one-year statute of limitations did not begin to run until that charge was *nol-prossed*.

¶14. On April 19, 2012, the circuit court entered an order of partial dismissal with prejudice:

> IT IS THEREFORE ORDERED that the claims of Plaintiff Enoch Oliver against all Defendants as to Negligence and Gross Negligence, Negligence *Per Se*, False Imprisonment/False Arrest, Defamation/Libel, Invasion of Privacy, Negligent/Intentional Infliction of Emotional Distress, Assault, Battery, Malicious Prosecution based on the misdemeanor charges are hereby dismissed with prejudice.
>
> IT IS FURTHER ORDERED the claim of Plaintiff Enoch Oliver against Defendants Cecil Lott, Charlene Burfield and Andre Watson as to Malicious Prosecution for the felony charge of aggravated assault on a law enforcement officer is hereby dismissed with prejudice.

¶15. This order dismissed with prejudice all claims against Officers Lott, Burfield, and Watson, leaving UMMC, McBeath, and Stewart as the only defendants. And even then, the sole remaining claim against them was the malicious-prosecution claim based on the felony charge.

### IV. Motion for Summary Judgment

¶16. Three-and-a-half years later, UMMC, McBeath, and Stewart filed a motion for summary judgment. UMMC argued, as a state agency, it had not waived sovereign immunity for a malice-based claim. *See* Miss. Code Ann. § 11-46-5(2) (Rev. 2012). And McBeath and Stewart argued Oliver lacked proof they maliciously prosecuted him. Alternatively, all

7

defendants cited the MTCA's police-protection and discretionary-function immunity. *See* Miss. Code Ann. § 11-46-9(1)(c), (d) (Rev. 2012).

¶17. In his response, Oliver "denie[d] that the only remaining claim in [his] lawsuit [was] for malicious prosecution pertaining to his felony charge." Instead, he insisted "[t]he other claims pertaining to his felony charge of aggravated assault on a police office remain, namely, the claims for negligence, gross negligence, negligence per se, defamation/libel, invasion of privacy, negligent/intentional infliction of emotional distress, assault, battery, false imprisonment and false arrest, among others."

¶18. On June 7, 2016, the circuit court denied the defendants' motion, finding genuine issues of material fact precluded summary judgment.

## V. Interlocutory Appeal

¶19. UMMC, McBeath, and Stewart filed for—and were granted—permission to file an interlocutory appeal. On appeal, they claimed they were entitled to summary judgment based on the running of the statute of limitations, sovereign immunity, discretionary-function immunity, police-protection immunity, and/or Oliver's failure to meet his burden of production to establish a triable malicious-prosecution claim.

¶20. This Court reviews the denial of a motion for summary judgment de novo, applying the same standard as the trial court. *Harrison v. Chandler-Sampson Ins., Inc.*, 891 So. 2d 224, 228 (Miss. 2005). We view the evidence in the light most favorable to the party against whom the motion has been made. *Id.* "The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." M.R.C.P. 56(c).

<u>Analysis</u>

### I.    Dismissed Claims

¶21.    As their first appellate issue, the defendants argue all of Oliver's claims—other than the alleged malicious prosecution of the felony charge—were time-barred. But the record shows all but this one claim had already been dismissed. Indeed, three years before the defendants moved for summary judgment, the circuit court dismissed with prejudice all of Oliver's claims except malicious prosecution of the felony charge. In opposing summary judgment, Oliver argued that his negligence-based claims somehow survived dismissal. However, the circuit judge's order of partial dismissal says otherwise. According to the order, the circuit judge expressly "dismissed Oliver's claims of "Negligence and Gross Negligence, Negligence *Per Se*, False Imprisonment/False Arrest, Defamation/Libel, Invasion of Privacy, Negligent/Intentional Infliction of Emotional Distress, Assault, Battery, Malicious Prosecution based on the misdemeanor charges" with prejudice. Comparing the pleadings with the order of partial dismissal, malicious prosecution based on the felony charge was the only claim left.

¶22.    The defendants concede this claim was timely filed because the one-year statute of limitations did not begin to run until October 14, 2009, the date the felony charges were *nol-prossed*. *See* **Bankston v. Pass Rd. Tire Ctr., Inc.**, 611 So. 2d 998, 1003 (Miss. 1992). So

9

the statute of limitations is not at issue in this interlocutory appeal, which encompasses only the order denying summary judgment.[3]

## II. Malicious-Prosecution Claim

### A. Against UMMC and Official-Capacity Defendants

¶23. What is, in fact, at issue here is the application, if any, of the MTCA to a malicious-prosecution claim against a law-enforcement officer and his or her government employer.

¶24. The MTCA statutorily replaced the common-law doctrine of sovereign immunity. *Wells ex rel. Wells v. Panola Cty. Bd. of Educ.*, 645 So. 2d 883, 889 (Miss. 1994). Section 11-46-5(1) waived "the immunity of the state and its political subdivisions from claims for money damages arising out of the torts of such governmental entities and the torts of their employees while acting within the course and scope of their employment." But the immunity waiver is not without exception and is qualified by Section 11-46-5(2):

> For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.

---

[3] That said, Oliver's remaining claims appear to have been properly dismissed as time-barred. For his negligence-based claims, Oliver concedes the UMMC officers were acting within the course and scope of their employment. Thus, the MTCA and its one-year statute of limitations applied. *See* Miss. Code Ann. §§ 11-46-7 and 11-46-11(2) (Rev. 2012). His intentional-tort claims—even if they fell outside the MTCA—were still subject to a one-year statute of limitations. *See* Miss. Code Ann. § 15-1-35 (Rev. 2015). So all dismissed claims had been subject to a one-year statute of limitations. And this one-year time limit to file suit began to run on January 16, 2008, making Oliver's July 20, 2010 complaint untimely. The lone exception was malicious prosecution, because Section 15-1-35's one-year statue of limitations did not begin to run until the felony charge was *nol-prossed* on October 14, 2009. *See Bankston*, 611 So. 2d at 1003.

So not all claims against a governmental entity and their employees are covered by the MTCA. **Zumwalt v. Jones Cty. Bd. of Supervisors**, 19 So. 3d 672, 688 (Miss. 2009). That being the case, the question this Court must answer is—does a claim that a government employee committed malicious prosecution fall under the MTCA? *See id.* (holding that, because the MTCA "provides specific exclusions to its protections and requirements, . . . each claim must be examined for MTCA application").

¶25.    This is an issue of first impression for this Court. The Mississippi Court of Appeals has held the MTCA applied to a malicious-prosecution claim against Simpson County and its sheriff. **Keen v. Simpson Cty.**, 904 So. 2d 1157, 1161 (Miss. Ct. App. 2004) (finding Simpson County exempt from liability based on Mississippi Code Section 11-46-9(1)(c)). And federal courts applying Mississippi law have gone both ways. In some cases, the Fifth Circuit and district courts have held malicious-prosecution claims fell under the MTCA.[4] While more recently, the Fifth Circuit and district courts have recognized the MTCA—specifically Section 11-46-5(2)—excludes malice-based torts, so malicious-prosecution claims can be brought only against the officers individually.[5]

---

[4] *E.g.*, **Porter v. Farris**, 328 Fed. App'x 286, 288-89 (5th Cir. 2009) (per curiam) (applying **Keen**, 904 So. 2d at 1161); **Harrison v. Yalobusha Cty.**, No. 3:09cv106-SA-JAD, 2010 WL 3937964, at *11-12 (N.D. Miss. Oct. 5, 2010) (applying MTCA to a malicious-prosecution claim).

[5] *E.g.,* **Rogers v. Lee Cty., Miss.**, No. 16-60537, 2017 WL 1242114, at *8 (5th Cir. April 3, 2017) (unpublished) (affirming in part **Rogers v. City of Tupelo, Miss.**, No. 1:13cv243-SA-DAS, 2015 WL 3450266, at *11-12 (N.D. Miss. May 29, 2015)); **Tuma v. Jackson Mun. Airport Auth.**, No. 3:09cv517-DPJ-FKB, 2012 WL 1229133, at * 6 n.7 (S.D. Miss. Apr. 10, 2012) (rejecting defendant's argument that malicious-prosecution claim was barred by police-protection exemption since the MTCA excludes such conduct from the course and scope of employment); **McBroom v. Payne**, No. 1:06cv1222-LG-JMR, 2010 WL

¶26. Here, the appellants and the appellee appear to want it both ways.

¶27. UMMC argues the MTCA does not apply to Oliver's claim against it, because conduct constituting malice is outside the course and scope of employment. Therefore, UMMC cannot, as a matter of law, be liable for the alleged malicious prosecution committed by its employees. Investigator McBeath and Officer Stewart, on the other hand, argue the MTCA does apply to Oliver's claims against *them*, because at all relevant times they were acting within the course and scope of their employment with UMMC. This, they suggest, shields them from personal liability. And in their official capacity, they suggest they enjoy police-protection immunity.

¶28. Similarly, Oliver argues the MTCA does and does not apply. Oliver agrees with McBeath and Stewart that the UMMC officers "were acting within the course and scope of their employment during the entire course of the sordid ordeal that gave rise to this litigation." For that reason, Oliver contends UMMC is vicariously liable for its employees' actions under the MTCA. But Oliver also asserts McBeath acted *with malice* by seeking a warrant and later a felony indictment for aggravated assault. If what Oliver asserts is true—that its officer acted maliciously—then as a matter of law, UMMC cannot be liable because the MTCA does not apply.

¶29. The obvious problem is that neither side can have it both ways. Either the MTCA applies or it does not. And based on the clear language of Section 11-46-5(2), we hold the

3942010, at *9 (S.D. Miss. Oct. 6, 2010) (concluding claims of battery, assault, and intentional infliction of emotional distress cannot be considered within a police officer's "course and scope of employment" under the MTCA).

12

MTCA does *not* apply to a malicious-prosecution claim against a governmental entity and its employees in their official capacity.

¶30.    Under Section 11-46-5(2), torts in which malice is an essential element "are not within the course and scope of employment." ***Zumwalt***, 19 So. 3d at 688. "Thus, these intentional torts are outside the scope of the MTCA's waiver of immunity, and the MTCA does not apply." ***Id.*** Rather, "any legal action against a governmental employee for these intentional torts must necessarily proceed against him or her as an individual." ***Id.***

¶31.    Malice is an essential element of malicious prosecution. ***Strong v. Nicholson***, 580 So. 2d 1288, 1293 (Miss. 1991). This means, to prove UMMC's officers committed malicious prosecution, Oliver must prove the officers acted with malice. If he meets this burden, then necessarily he has proven they were acting outside the course and scope of their employment for purposes of the MTCA. *See* Miss. Code Ann. § 11-46-5(2) (Rev. 2012); *see also* Miss. Code Ann. § 11-46-7(2) (Rev. 2012) (containing identical provision).

¶32.    For UMMC, this means, as a matter of law, it cannot be liable, and sovereign immunity cannot be considered to have been waived for the alleged malicious conduct of its officers. So the circuit court erred by not granting UMMC summary judgment on this basis.

### B.    Against Individual Defendants

¶33.    For McBeath and Stewart, this means Oliver's malicious-prosecution action necessarily proceeds against them in their individual capacities. *See **Zumwalt***, 19 So. 3d at 688. Because the MTCA does not apply, Section 11-46-7(2) does not act as a shield against individual liability. *See* Miss. Code Ann. § 11-46-7(2); *see also **Rogers v. City of Tupelo,***

13

*Miss.*, 2015 WL 3450266, at \*12. Nor can they claim one of Section 11-46-9(1)'s exemptions to liability applies. *See* Miss. Code Ann. § 11-46-9(1) (Rev. 2012). For this reason, we overrule *Keen* to the extent the Court of Appeals applied Section 11-46-9(1)(c) to the malicious-prosecution claim against Simpson County and its sheriff. *See Keen*, 904 So. 2d at 1161.

¶34. Still, we find McBeath and Stewart are entitled to summary judgment on Oliver's malicious-prosecution claim. To recover for malicious prosecution, a plaintiff must prove six essential elements: "(1) the institution of a criminal proceeding; (2) by, or at the instance of, the defendant; (3) termination of such proceedings in plaintiff's favor; (4) malice in instituting the proceeding; (5) want of probable cause for the proceeding; and (6) the plaintiff's suffering of injury or damage as a result of the prosecution." *Strong*, 580 So. 2d at 1293 (citations omitted).

¶35. At the summary-judgment stage, Oliver's burden of proof became a burden of production. Oliver had to present sufficient evidence to establish each of these essential elements. *See Karpinsky v. Am. Nat'l Ins. Co.*, 109 So. 3d 84, 89 (Miss. 2013). If he fails to establish malice, then he has no triable malicious-prosecution claim. *See Rogers v. Lee Cty., Miss.*, 2017 WL 1242114, at \*8 (rejecting officer's argument that MTCA immunity applied but still affirming the grant of summary judgment based on the plaintiff's failure to show a genuine issue of material fact on the element of malice).

¶36. So what is "malice" for purposes of malicious prosecution? As we explained in *Strong*, "malice in the law of malicious prosecution is a term used in an artificial and legal

14

sense." ***Strong***, 580 So. 2d at 1293. "It connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice." ***Id.*** (citing ***Benjamin v. Hooper Elec. Supply Co.***, 568 So. 2d 1182, 1191 (Miss. 1990); ***Royal Oil Co., Inc. v. Wells***, 500 So. 2d 439, 444 (Miss. 1986); ***Owens v. Kroger Co.***, 430 So. 2d 843, 847 (Miss. 1983); ***State Life Ins. Co. of Indianapolis v. Hardy***, 189 Miss. 266, 277, 195 So. 708, 713 (1940)). "As such, it refers to the defendant's *objective*, not his attitude." ***Id.*** (emphasis added).

¶37. In light of this definition, when suing a law-enforcement officer for malicious prosecution, a plaintiff like Oliver has to show the officer instituted criminal proceeding with a purpose other than *doing his or her job*, which includes bringing criminal offenders to justice. This is a high bar. As the Louisiana Supreme Court has described it: "Malice is found when the defendant uses the prosecution for the purpose of obtaining any private advantage, for instance, as a means to extort money, to collect a debt, to recover property, to compel performance of a contract, to 'tie up the mouths' of witnesses in another action, or as an experiment to discover who might have committed the crime." ***Miller v. E. Baton Rouge Par. Sheriff's Dep't***, 511 So. 2d 446, 453 (La. 1987). After a de novo review of the record, we find Oliver's evidence, even when viewed favorably, failed to reach this bar.

¶38. As to Stewart, his involvement was limited. According to the record, he merely helped Lott and Watson remove Oliver from the van. Stewart did not file misdemeanor charges nor did he author one of the incident reports that led to Oliver's felony arrest. So Oliver has no evidence Stewart initiated criminal proceedings against Oliver—let alone that

he did so with a malicious objective. Thus, Oliver has no malicious-prosecution claim against this defendant.

¶39. Instead, Oliver's malicious-prosecution allegations are lodged against Investigator McBeath. While Oliver claims McBeath acted maliciously, he concedes McBeath acted within the course and scope of his employment as an law-enforcement officer with UMMC. So taking this concession at face value, McBeath could not have acted with malice. *See* ***Strong***, 580 So. 2d a 1293 (emphasizing malice "connotes a prosecution instituted primarily for a purpose other than that of bringing an offender to justice").

¶40. But even if Oliver's concession that McBeath was acting in the course and scope of his employment, itself, does not preclude a jury finding of malice, Oliver still failed in his burden.

¶41. In his brief, Oliver gives two reasons why McBeath acted with malice in bringing the felony charge against him. His first is that McBeath "increased the gravity of the charge" from simple assault to aggravated assault on a police officer. According to Oliver, Officer Lott, the assault victim, had charged Oliver only with simple assault, while McBeath, who was not even there, charged him with felony assault.[6] But the fact McBeath recommended a felony charge, itself, certainly is not evidence of malicious intent. According to McBeath's affidavit, his job required he review incident reports to determine if a felony had been committed. And based on Officer Lott's report—which was corroborated by two other

---

[6] We note that, three years later in his deposition, Officer Lott testified he charged Oliver with simple assault the day of his arrest. But official court documents show the three charges brought on January 16, 2008, were disorderly conduct, resisting arrest, and carrying a concealed weapon.

officer reports—Investigator McBeath had sufficient evidence to determine Oliver's uncontested act of pointing a pistol at Officer Lott's face constituted a felony. *See* Miss. Code Ann. § 97-3-7(1)(b) (Rev. 2014).

¶42. Second, Oliver asserts McBeath "misrepresented the facts" when securing the arrest warrant for the felony charge. Oliver suggests McBeath "shaded the truth in the underlying fact sheet" and "conveyed the idea that Oliver had engaged in domestic violence at Wiser Hospital and had attempted to flee the scene." He insists McBeath did so though he "knew that Oliver was not involved in any domestic abuse at the hospital and that Stoglin did not convey this to the other officers."

¶43. Nothing in the record supports this claim. Instead, the record shows McBeath read Officer Stoglin's report as part of his investigation. According to that report, Stoglin responded to a "domestic violence call." Oliver's wife had just given birth. And the nursing staff reported the couple was "arguing loudly" and Oliver had "stormed out of the room." Oliver's wife had a "black eye" and "was visibly upset." She claimed he gave her the black eye in an earlier fight. But she reported he "definitely hit her with his hands." In light of this, Stoglin notified officers to be on the lookout for Oliver. So Oliver has no support for his contention that the reviewing investigator, McBeath, knowingly misrepresented facts about Oliver's actions toward his wife to obtain a felony arrest warrant.

¶44. Nor can Oliver show McBeath lacked probable cause to bring the felony charge—another essential element of malicious prosecution. *See* ***Strong***, 580 So. 2d at 1293. Oliver

17

argues the order of *nolle prosequi* sufficiently establishes McBeath lacked probable cause to press the felony charge. This is wrong for two reasons.

¶45. First, the reasoning underlying the *nol-pros* order was not legally sound. Under Mississippi law, pointing a loaded pistol in an officer's face certainly supports felony assault. Second, and most important to our analysis, probable cause is not determined after the fact. Instead, when evaluating probable cause, this Court "look[s] to the facts reasonably available to each Defendant *at the time he initiated* the said-to-be-malicious prosecution." *Id.* at 1294 (emphasis added). So the fact the felony charge was *later nol-prossed* and the reasons given cannot establish lack of probable cause at the time the charge was made. The undisputed facts available to McBeath on January 17, 2008—the date he initiated the felony prosecution—were that Oliver pointed a gun in the officer's face, who ducked to avoid being shot. So at the time, McBeath clearly had probable cause to arrest Oliver for felony assault.

¶46. Because McBeath failed to meet his burden of production—to establish a triable malicious-prosecution claim against the individual defendants, McBeath and Stewart—the circuit court erred when it found a genuine issue of material fact prevented entry of summary judgment in their favor.

## Conclusion

¶47. UMMC is entitled to a judgment as a matter of law, as it cannot be liable for the alleged malicious conduct of its employees. Stewart is entitled to summary judgment because Oliver makes no claim he committed malicious prosecution. And McBeath is

18

entitled to summary judgment because Oliver failed to establish genuine issues of material fact that McBeath acted with malice and lacked probable cause.

¶48.  We thus reverse the order denying the defendants summary judgment on Oliver's malicious-prosecution claim.  Because Oliver has no remaining claims, we render a final judgment in the defendants' favor.

¶49.  **REVERSED AND RENDERED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN, BEAM AND CHAMBERLIN, JJ., CONCUR.**