# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-01048-COA

| | |
|---|---|
| AMANDA KAY RENFROE, INDIVIDUALLY; S.W.R., A MINOR, BY AND THROUGH HIS MOTHER AND NEXT FRIEND AMANDA KAY RENFROE; THE ESTATE OF MICHAEL WAYNE RENFROE; AND AMANDA KAY RENFROE, IN HER CAPACITY AS ADMINSTRATRIX OF THE ESTATE OF MICHAEL WAYNE RENFROE | APPELLANTS |

**v.**

| | |
|---|---|
| ROBERT DENVER PARKER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES; AND SHERIFF RANDALL TUCKER, IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES | APPELLEES |

DATE OF JUDGMENT:                08/18/2021
TRIAL JUDGE:                     HON. M. BRADLEY MILLS
COURT FROM WHICH APPEALED:       MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS:         WILLIAM CHARLES BELL
ATTORNEY FOR APPELLEES:          CHARLES EDWARD COWAN
NATURE OF THE CASE:              CIVIL - WRONGFUL DEATH
DISPOSITION:                     AFFIRMED - 03/21/2023
MOTION FOR REHEARING FILED:

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1.     Amanda Renfroe, on behalf of herself and others (collectively, "Amanda"), filed suit in the Madison County Circuit Court against Deputy Robert D. Parker and Sheriff Randall Tucker of the Madison County Sheriff's Department in their individual and official capacities after Amanda's husband, Michael Renfroe, was shot and killed by Deputy Parker. The circuit court granted summary judgment in favor of the defendants after finding that both

Deputy Parker and Sheriff Tucker were immune from liability pursuant to Mississippi Code Annotated section 11-46-9(c)-(d) (Supp. 2016) of the Mississippi Tort Claims Act (MTCA). The circuit court also entered a final judgment dismissing Amanda's complaint with prejudice as to all claims and all defendants.

¶2.     Amanda now appeals, arguing that the circuit court committed reversible error by granting summary judgment in favor of Deputy Parker and Sheriff Tucker. After our review, we find no error. Accordingly, we affirm the circuit court's grant of summary judgment and dismissal of all claims against the defendants in their individual and official capacities.

## FACTS AND PROCEDURAL HISTORY

*Background*

¶3.     On the morning of June 8, 2018, Michael's mother, Faye Renfroe, contacted the Madison County Sheriff's Department (MCSD) requesting assistance in taking Michael into protective custody pending an involuntary-commitment proceeding for mental illness. Faye reported that Michael had been found walking naked on the side of a state highway in Madison County, Mississippi, and that he had been showing other signs of mental illness. Faye was advised that the MCSD did not have jurisdiction or authority to provide such assistance at that time.

¶4.     Later that evening, at approximately 10:00 p.m., the MCSD received a call from Willard McDaniel and his wife regarding an attempted burglary at their home. McDaniel stated that two individuals had attempted to enter his home and burglarize his truck. He

2

provided dispatch with a description of the pickup truck that the suspects were driving. Deputy Parker, wearing his MCSD uniform and driving a marked MCSD vehicle, responded to the call and began searching for a truck fitting the description. In his affidavit, Deputy Parker stated that he was unaware of Faye's earlier call to the MCSD seeking to commit Michael.

¶5. While driving down Old Natchez Trace Road, Deputy Parker observed that there was no traffic on the road, and as a result, he decided to turn off his blue lights and siren to avoid alerting potential suspects to his presence. Deputy Parker left the patrol car's high-beam headlights on. He also left his dash camera engaged the entire time he was present in the area, which showed all but the last eight seconds of his encounter with Michael and Amanda.

¶6. Deputy Parker eventually approached a white Chevrolet truck traveling on the road. Without any instruction from Deputy Parker, the driver of the truck stopped the vehicle and parked it on the right side of the road. Deputy Parker then proceeded to stop his patrol car. As the patrol car came to a stop, Deputy Parker observed the driver, later identified as Michael, emerge from the driver's side of the truck, wearing only pajama bottoms. Without being instructed, Michael then extended his hands out by his sides, showing his open palms, and then dropped down onto his hands and knees.

¶7. Deputy Parker radioed dispatch and reported that he had found the truck described in the burglary, that he was exiting his patrol car, and that a man wearing no shirt had emerged from the vehicle and was lying on the ground. Deputy Parker then exited the patrol car and

3

stood behind the open driver's side door. Deputy Parker admitted that he did not identify himself as a law enforcement officer; however, he stated that his patrol car was parked slightly at an angle, and the open driver's side door of the vehicle was marked with the MCSD emblem.

¶8. Deputy Parker asked Michael if there were any other occupants in the vehicle. In response, Michael looked back at the truck and instructed someone to exit. Amanda, Michael's wife, exited the passenger side and walked toward the back of the truck. As Deputy Parker ordered Amanda to get on the ground, Michael suddenly rose from the ground and began running toward Deputy Parker yelling, "[N]ow, M . . . F . . . , let's do this." Deputy Parker stated that as Michael sprinted toward him, he feared for his life. Deputy Parker deployed his taser in an attempt to stop Michael, but Michael snatched the taser darts from his chest and continued to charge toward Deputy Parker.

¶9. After that point, Michael and Deputy Parker were out of the view of the dashcam. Deputy Parker stated that he did not have time to insert another cartridge into his taser before Michael began assaulting him. Deputy Parker threw his taser down and prepared to defend himself by fighting Michael off of him. A struggle ensued, and Michael began assaulting Deputy Parker. According to Deputy Parker, Michael placed his hands around Deputy Parker's throat and tried to choke him. Michael also hit Deputy Parker on the side of his head. Deputy Parker stated that he attempted to strike Michael in his face, but Michael deflected his attempts.

4

¶10.    Deputy Parker managed to free himself from Michael and stepped back away from him, but Michael started running toward him again.  In response, Deputy Parker drew his weapon and fired four rapid shots at Michael, stepping backward after each shot.  Deputy Parker explained that he fired his weapon until he felt like Michael was no longer a threat to his safety.  Michael died at the scene as a result of his injuries.

¶11.    In his affidavit, Deputy Parker asserted that when Michael began assaulting him, he feared for his life.  Deputy Parker stated that he only used deadly force to prevent Michael from seriously injuring or killing him.  The record reflects that at the time of the altercation, Deputy Parker was 5'11 and weighed 150 pounds, and Michael was 6'2 and weighed 205 pounds.

*Federal Court Lawsuit*

¶12.    On August 31, 2018, Amanda filed a complaint in the United States District Court for the Southern District of Mississippi on behalf of herself, individually, and as the natural mother and next friend of S.W.R., her and Michael's minor child, against Deputy Parker in his individual and official capacities.  In her complaint, Amanda raised a claim under 42 U.S.C. § 1983, alleging that Deputy Parker was liable for violating Michael's Fourth Amendment right to be free from an unreasonable seizure of his person.  Amanda filed an amended complaint adding Sheriff Tucker as a defendant in his individual and official capacities. Amanda asserted the following federal and state-law claims: (1) Fourth Amendment excessive force, (2) outrage: intentional and/or negligent infliction of severe

emotional distress, (3) assault, (4) battery, (5) false arrest/false imprisonment, (6) culpable negligence manslaughter through felony engagement, and (7) culpable negligence manslaughter through criminal engagement. She further stated that the "illegal acts underlying the factual basis for actionable claims asserted in Counts I through [VII were] not subject to the Mississippi Tort Claims Act."

¶13. The district court entered an order dismissing Amanda's federal individual-capacity claims against Deputy Parker and Sheriff Tucker after finding that Deputy Parker's actions were objectively reasonable when he shot Michael. The court found that Deputy Parker did not violate Michael's Fourth Amendment rights by using excessive force against him. *Renfroe v. Parker*, No. 3:18-CV-609-DPJ-LRA, 2019 WL 2410084, at *4 (S.D. Miss. June 7, 2019). The district court declined Deputy Parker's and Sheriff Tucker's request to award summary judgment sua sponte on the official-capacity claims. Amanda filed a motion for reconsideration of the district court's decision, which was denied. *Renfroe v. Parker*, No. 3:18-CV-609-DPJ-LRA, 2019 WL 380664, at *5 (S.D. Miss. Aug. 13, 2019). On August 22, 2019, the district court entered an order granting summary judgment in favor of Deputy Parker and Sheriff Tucker on the federal claims. Order, *Renfroe ex rel. S.W.R. v. Parker*, No. 3:18-CV-609-DPJ-LRA, at 2-3 (S.D. Miss. Aug. 22, 2019). The district court also dismissed Amanda's state-law claims without prejudice under 28 U.S.C. § 1367(c)(3).

¶14. Amanda appealed to the Fifth Circuit Court of Appeals, and the Fifth Circuit affirmed the district court's decision. *Renfroe v. Parker*, 974 F.3d 594, 601 (5th Cir. 2020). After the

Fifth Circuit denied rehearing, Amanda then filed a petition for writ of certiorari to the United States Supreme Court, which was denied. *Renfroe v. Parker*, 141 S. Ct. 2519 (2021).

¶15. While Amanda's petition for rehearing was pending before the Fifth Circuit, she filed a motion pursuant to Federal Rule of Civil Procedure 60(b) seeking relief from the district court's final judgment on the objective reasonableness of Deputy Parker's conduct. The district court denied her motion, and Amanda appealed. *Renfroe v. Parker*, No. 3:18-CV-609-DPJ-LRA, 2020 WL 6329468, at *6 (S.D. Miss. Oct. 28, 2020). The Fifth Circuit affirmed the district court's order denying Amanda's federal Rule 60(b) motion. *Renfroe v. Parker*, No. 3:18-CV-609, 2022 WL 794971, at *1 (5th Cir. Mar. 15, 2022).

*State Court Lawsuit*

¶16. After the federal district court dismissed her state-law claims without prejudice, Amanda filed a complaint against Deputy Parker and Sheriff Tucker in their official and individual capacities in the Madison County Circuit Court. In the complaint, Amanda asserted claims for intentional infliction of emotional distress as to Michael, loss of consortium and intentional infliction of emotional distress as to Amanda, assault and battery as to Michael, and related wrongful death damages.[1]

¶17. Deputy Parker and Sheriff Tucker answered the complaint and claimed qualified and

---

[1] Amanda pleaded that on June 7, 2019, a tort claims notice for Michael's estate had been personally served on the Madison County Chancery Court. However, the complaint did not allege that Amanda gave pre-suit notice to the defendants as to her personal claims. The estate's MTCA letter was not included in the record.

7

absolute immunity under the provisions of Mississippi Code Annotated section 11-46-9(c)-(d). Deputy Parker and Sheriff Tucker also filed a motion for summary judgment in the circuit court. In support of the motion, they attached Amanda's federal-court complaints; affidavits from Sheriff Tucker and Deputy Parker; the patrol car dashcam footage; excerpts of the deposition testimony of Amanda and the defendants' expert witness, Mark Duntson; the expert report of Amanda's expert witness, Roy G. Taylor; the deposition of Dr. Mark LeVaughn; and Deputy Parker's taser training files. Deputy Parker and Sheriff Tucker argued that as a result of Amanda's unsuccessful federal litigation, the claims in this action were barred by the doctrines of res judicata and collateral estoppel. According to Deputy Parker and Sheriff Tucker, the four identities required under the doctrine of res judicata existed between Amanda's federal-court claims, which had been fully adjudicated, and the state court claims Amanda alleged in the instant action.

¶18. On June 22, 2021, Amanda filed her response and memorandum brief in opposition to the summary judgment motion.[2] Amanda argued that Deputy Parker's inconsistent statements regarding his actions on the night of the shooting precluded summary judgment

---

[2] Amanda attached fourteen exhibits to her memorandum brief. Those exhibits included: (1) excerpts from Deputy Parker's video deposition, (2) Dr. LeVaughn's deposition, (3) Deputy Parker's MBI questioning transcript, (4) Dr. Michael Baden's expert report, (5) photos of Deputy Parker, (6) "Use of Force" policy, (7) Taylor's expert report, (8) excerpts from Amanda's deposition, (9) excerpts from Dunston's deposition, (10) excerpts from MBI Agent Guy Collins's deposition, (11) Amanda's federal court Rule 60 motion, (12) Amanda's federal Rule 60 memorandum in support of her motion, (13) a federal order setting qualified immunity deadlines, (14) the federal district court's final opinion, and (15) the federal district court's final judgment.

under any part of the MTCA. Amanda also argued that there was a genuinely disputed issue of material fact about Deputy Parker's malice in shooting and killing Michael. Amanda further claimed that Deputy Parker's acts of malice were not subject to, and fell outside of, the MTCA.

¶19. On July 9, 2021, Deputy Parker and Sheriff Tucker filed a rebuttal in support of their motion for summary judgment and argued that Amanda's response failed to establish why res judicata or collateral estoppel did not bar her state-law claims. They also argued that Amanda's response failed to identify any disputed material fact that would defeat Deputy Parker's and Sheriff Tucker's claims of immunity under the MTCA.

¶20. In an order signed on August 18, 2021, the circuit court granted the motion for summary judgment after finding that Deputy Parker and Sheriff Tucker were immune from suit under the provisions of section 11-46-9(c)-(d) of the MTCA. The circuit court also entered a final judgment in favor of Deputy Parker and Sheriff Tucker the same day, dismissing with prejudice all claims and defendants.

¶21. Amanda now appeals, arguing that the circuit court's grant of summary judgment was improper.

**STANDARD OF REVIEW**

¶22. When reviewing the grant or denial of summary judgment, we utilize a de novo standard. *Methodist Healthcare-Olive Branch Hosp. v. McNutt*, 323 So. 3d 1051, 1055 (¶10) (Miss. 2021). "Summary judgment is appropriate when the pleadings, depositions, answers

9

to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id*. (internal quotation mark omitted) (quoting M.R.C.P. 56(c)). "All evidence will be viewed in the light most favorable to the nonmoving party." *Id*. at 1056 (¶10). "To avoid summary judgment, the non-movant must set forth specific facts that demonstrate a genuine issue of material fact that merits trial instead of mere unsubstantiated allegations." *Progressive Gulf Ins. Co. v. Dickerson & Bowen Inc*., 965 So. 2d 1050, 1053 (¶8) (Miss. 2007).

## DISCUSSION

¶23. On appeal, Amanda argues that the circuit court committed reversible error by finding that Deputy Parker and Sheriff Tucker were immune from suit under the MTCA. Amanda asserts that claims alleging malice and reckless disregard are not subject to the MTCA. Amanda also argues that "[t]here are many genuinely disputed facts about [Deputy] Parker's shooting and killing of an unarmed Michael[.]" Amanda submits that the circuit court's order granting summary judgment did not mention or provide analysis for Amanda's malice claims or reckless disregard claims, nor did it make any findings about disputed facts.

¶24. As stated, Deputy Parker and Sheriff Tucker filed a motion for summary judgment and asserted the following arguments: (1) Amanda's claims against Deputy Parker and Sheriff Tucker are barred by the doctrine of res judicata; (2) collateral estoppel precluded Amanda from re-litigating the reasonableness of the force Deputy Parker used toward Michael on June

10

8, 2018; and (3) under the MTCA, Deputy Parker and Sheriff Tucker are immune from Amanda's state-law claims against them.

¶25. The circuit court entered an order granting summary judgment after finding Deputy Parker and Sheriff Tucker "are immune from suit under the provisions of [section] 11-46-9(c) and (d) of the [MTCA]." The circuit court also entered a final judgment dismissing Amanda's complaint with prejudice "as to all claims and all defendants." Our standard of review of a circuit court's grant of summary judgment is de novo, and "the rationale behind the trial court's decision . . . would not be particularly helpful. For that reason, we do not find the absence of findings of fact and conclusions of law to be reversible error." *Koestler v. Miss. Coll.*, 749 So. 2d 1122, 1126 (¶18) (Miss. Ct. App. 1999). We now turn to address the issues before us on appeal.

### I. Res Judicata

¶26. Deputy Parker and Sheriff Tucker argue that the doctrine of res judicata barred Amanda's state-law claims after her federal claims were dismissed by the district court.

¶27. Before the doctrine of res judicata will be applicable, four identities must be present: (1) identity of the subject matter of the action, (2) identity of the cause of action, (3) identity of the parties to the cause of action, and (4) identity of the quality or character of a person against whom the claim is made. *Griffin v. Adams*, 291 So. 3d 825, 827 (¶5) (Miss. Ct. App. 2020). "If the four identities are present, parties are prevented from re-litigating any and all issues tried in the previous lawsuit," including claims that should have been litigated and

11

decided. *Id*. However, "res judicata only applies to final judgments on the merits." Thus, "[e]ven if all four elements of res judicata are satisfied, the prior judgment also must be final and on the merits." *Clark v. Neese*, 262 So. 3d 1117, 1125 (¶23) (Miss. 2019).

¶28.    As stated, the district court entered an order on August 22, 2019, granting summary judgment in favor of Deputy Parker and Sheriff Tucker on the federal claims, but the court dismissed Amanda's state-law claims *without* prejudice. "[D]ismissal without prejudice is not an adjudication on the merits, and therefore, res judicata does not apply." *Hotboxxx LLC v. City of Gulfport*, 154 So. 3d 21, 25 (¶10) (Miss. 2015). We therefore find that res judicata did not bar Amanda from bringing her state-law claims in the circuit court.

## II.    Official-Capacity Claims

¶29.    Amanda asserted the following state-law claims against Deputy Parker and Sheriff Tucker in their official (and individual) capacities: intentional infliction of emotional distress as to Michael, loss of consortium and intentional infliction of emotional distress as to Amanda, assault and battery as to Michael, and related wrongful death damages.

¶30.    The supreme court has held that "[c]laims based on allegedly tortious acts by government employees acting within the course and scope of their employment fall under the MTCA and may only be brought against the employees in their representative capacity." *Mark v. City of Hattiesburg*, 289 So. 3d 294, 296 (¶4) (Miss. 2020) (citing Miss. Code Ann. §§ 11-46-5(2) & -7(2) (Rev. 2019)). However, "a government employee is not considered to be acting within the course and scope of his or her employment—and may be sued in his

12

or her individual capacity—if the allegedly tortious conduct 'constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations.'" *Id*. The supreme court has explained that "torts in which malice is an essential element are not within the course and scope of employment[,] . . . [and therefore] these intentional torts are outside the scope of the MTCA's waiver of immunity, and the MTCA does not apply." *Univ. of Miss. Med. Ctr. v. Oliver*, 235 So. 3d 75, 82 (¶30) (Miss. 2017) (citation and internal quotation marks omitted). Accordingly, "any legal action against a governmental employee" for claims of intentional infliction of emotional distress, assault, and battery "must necessarily proceed against him or her as an individual." *Id*.; *see also Thomas v. City of Laurel*, No. 2:19-CV-112-KS-MTP, 2021 WL 1148470, at *8 (S.D. Miss. Mar. 25, 2021) (stating that the MTCA does not bar the personal liability of an individual police officer for claims of intentional infliction of emotional distress, assault, and battery).

¶31. Because the MTCA does not apply to claims for intentional infliction of emotional distress, assault, and battery against governmental employees in their official capacity, we find that the circuit court did not err in granting summary judgment in favor of Deputy Parker and Sheriff Tucker for the claims against them in their official capacities.[3]

---

[3] In her complaint, Amanda also pleaded that Sheriff Tucker was liable under the theory of respondeat superior pursuant to Mississippi Code Annotated section 19-25-19 (Rev. 2012) for the alleged malicious acts of Deputy Parker. However, because we find that none of Amanda's claims against Deputy Parker in his official capacity are viable, this precludes any subsequent claims against Sheriff Tucker in his official capacity. *See Univ. of Miss. Med. Ctr.*, 235 So. 3d at 83 (¶32) (holding government entity cannot be liable and sovereign immunity cannot be considered to have been waived for alleged malicious conduct

### III. Individual-Capacity Claims

#### *A. Collateral Estoppel*

¶32. Actions against governmental employees for intentional infliction of emotional distress, assault, and battery do not fall under the MTCA; therefore, Amanda's claims must proceed against Deputy Parker and Sheriff Tucker in their individual capacities. However, upon review, we find that these claims are defeated by the doctrine of collateral estoppel.

¶33. Our supreme court has explained that "[c]ollateral estoppel exists to prevent 'parties from relitigating issues authoritatively decided on their merits in prior litigation to which they were parties or in privity.'" *Miss. Sand Sols. LLC v. Otis*, 312 So. 3d 349, 355 (¶12) (Miss. 2020). Collateral estoppel requires a party "to prove that the specific disputed issue was 'actually litigated, determined by, and essential to the judgment in the former action, even though a different cause of action is the subject of the subsequent action.'" *Id*. In determining whether the doctrine applies, "we look to see if the specific issue was addressed and ruled upon in the prior case." *Id*. at (¶13).

¶34. The record shows that although the district court dismissed Amanda's state-law claims *without* prejudice, the district court granted summary judgment as to Amanda's federal individual-capacity claims against Deputy Parker and Sheriff Tucker, including her claim that Deputy Parker used excessive force against Michael, and dismissed these claims *with* prejudice. *Renfroe*, 2019 WL 2410084, at \*5, *amended in part*, 2019 WL 3806641, at \*4

---

of its officers).

14

(S.D. Miss. Aug. 13, 2019); Order, *Renfroe ex rel. S.W.R. v. Parker*, No. 3:18-CV-609-DPJ-LRA, at 2-3 (S.D. Miss. Aug. 22, 2019); *see also McNutt*, 323 So. 3d at 1059 (¶21) ("[T]he general rule is that a dismissal with prejudice functions as a dismissal on the merits."). In granting summary judgment, the federal court ruled as a matter of law that Deputy Parker's use of force was objectively reasonable and not excessive, explaining: "A reasonable officer under these circumstances would have perceived a threat of death or serious bodily harm, so the use of deadly force was not excessive." *Renfroe,* 2019 WL 2410084, at \*4; *see also Strickland v. Est. of Broome*, 179 So. 3d 1088, 1094 (¶18) (Miss. 2015) ("A final judgment on the merits is a judgment based on the evidence rather than on the technical or procedural grounds." (internal quotation marks omitted)).

¶35.    Amanda asserts that Deputy Parker is liable for intentional infliction of emotional distress, assault, and battery because his use of force was unnecessary and deadly. However, her assertion contradicts the district court's finding that Deputy Parker's use of force was objectively reasonable and not excessive. The specific issue of whether Deputy Parker's force was unnecessary and excessive "was addressed and ruled upon" by the district court. *Miss. Sand Sols. LLC*, 312 So. 3d at 355 (¶13). As a result, Amanda is collaterally estopped from bringing her state-law claims of intentional infliction of emotional distress, assault, battery, and, accordingly, loss of consortium, against Deputy Parker in his individual capacity and Sheriff Tucker vicariously.

> **B.    *Genuine Issue of Material Fact*

15

¶36. Even if collateral estoppel did not apply, summary judgment is still proper here because Amanda failed to meet her burden of proving the existence of a genuine issue of material fact as to these claims. *Progressive Gulf Ins. Co.*, 965 So. 2d at 1053 (¶8). As stated, we review a circuit court's grant of summary judgment de novo.

### 1. Intentional Infliction of Emotional Distress

¶37. In her complaint, Amanda brought a bystander claim for intentional infliction of emotional distress against Deputy Parker and Sheriff Tucker, both for herself and for the estate. To prevail on a claim for intentional infliction of emotional distress, Amanda must show:

> (1) [Deputy Parker] acted willfully or wantonly toward the plaintiff[s] by committing certain described actions; (2) [Deputy Parker's] acts are ones "which evoke outrage or revulsion in civilized society"; (3) [t]he acts were directed at, or intended to cause harm to, the plaintiff[s]; (4) [t]he plaintiff[s] "suffered severe emotional distress as a direct result of the acts of the defendant"; and (5) "[s]uch resulting emotional distress was foreseeable from the intentional acts of [Deputy Parker]."

*Orr v. Morgan*, 230 So. 3d 368, 375-76 (¶18) (Miss. Ct. App. 2017). "Mississippi's standard for a claim of intentional infliction of emotional distress is very high, focusing specifically on the defendant's conduct and not the plaintiff's emotional condition." *Id.* (internal quotation mark omitted). "[T]he severity of the conduct at issue must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (¶41) (Miss. Ct. App. 2011) (internal quotation mark omitted).

16

¶38. The federal court addressed the issue of whether Deputy Parker used excessive force on Michael and ruled that Deputy Parker's use of force was objectively reasonable and not excessive. Our review of the record also confirms that Deputy Parker's use of force was objectively reasonable and not excessive. Therefore, Deputy Parker's actions could not be considered to "evoke outrage or revulsion in civilized society." Additionally, we find that "there was no evidence whatsoever that any conduct by [Deputy Parker] was so extreme in degree as to be beyond all possible bounds of decency or to be atrocious and utterly intolerable." *Mark v. City of Hattiesburg*, No. 2016-CA-01638-COA, 2019 WL 125656, at *6 (¶34) (Miss. Ct. App. 2019). Amanda's claim accordingly fails.

¶39. Viewing the evidence in the light most favorable to Amanda, we find no evidence in the record to support her claim of intentional infliction of emotional distress.

## 2. Assault and Battery Claims

¶40. Amanda also asserts that Deputy Parker is liable for assault and battery under state law because Deputy Parker intentionally and unlawfully shot and killed Michael "by using unnecessary deadly force against an unarmed man in pajama bottoms." The supreme court has defined the intentional torts of assault and battery as follows:

> Assault occurs where a person "(a) acts intending to cause a harmful or offensive contact with the person of the other or a third person, or an imminent apprehension of such a contact, and (b) the other is thereby put in such imminent apprehension." A battery goes one step beyond an assault in that a harmful contact actually occurs.

*Webb v. Jackson*, 583 So. 2d 946, 951 (Miss. 1991) (citation omitted).

17

¶41. When making an arrest, a police officer "may exert such physical force as is necessary to effect the arrest by overcoming the resistance he encounters, but he can not take the life of the accused or inflict upon him great bodily harm except to save his own life or to prevent a like harm to himself." *Id.* (citing *Holland v. Martin*, 214 Miss. 1, 9, 56 So. 2d 398, 400 (1952)). The supreme court has further stated that "the use of firearms by a police officer is not justified except to protect himself from reasonably apparent bodily harm or death at the hands of the suspect." *Whitten v. Cox*, 799 So. 2d 1, 8 (¶11) (Miss. 2000).

¶42. Here, the federal court found that based on Michael's conduct leading up to the shooting, "[a] reasonable officer under these circumstances would have perceived a threat of death or serious bodily harm . . . ." *Renfroe,* 2019 WL 2410084, at *4. Our review of the record confirms that Deputy Parker was "considerably smaller" than Michael and that Deputy Parker's attempt to use non-lethal force failed to stop Michael from attacking him.

¶43. After our review, we find that Amanda failed to submit sufficient evidence to support her claim that Deputy Parker intentionally and unlawfully shot and killed Michael by using unnecessary deadly force. Accordingly, we find that Amanda failed to prove the existence of "a genuine issue of material fact that merits trial instead of mere unsubstantiated allegations" as to her state-law individual-capacity claims for assault and battery. *Progressive Gulf Ins. Co.*, 965 So. 2d at 1053 (¶8).

### 3. Loss of Consortium Claim

¶44. Because Amanda's state-law claims for intentional infliction of emotional distress and

assault and battery fail, her loss of consortium claim also fails. "Mississippi law dictates that if the underlying personal injury claim is disposed of, the loss of consortium claim cannot be maintained on its own." *J & J Timber Co. v. Broome*, 932 So. 2d 1, 6 (¶19) (Miss. 2006) (citing *McCoy v. Colonial Baking Co. Inc.*, 572 So. 2d 850, 852-54 (Miss. 1990) ("When a loss resulting from injury to a person may be recovered by either the injured person or another person (e.g., for loss of consortium), . . . [a] judgment for or against the injured party has preclusive effects on any such other person's claim . . . .")).

## CONCLUSION

¶45. After our review, we find that Deputy Parker and Sheriff Tucker are entitled to summary judgment on Amanda's state-law claims against them in their official capacities and in their individual capacities. We therefore affirm the circuit court's judgment dismissing all claims and defendants.

¶46. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. McDONALD, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J. EMFINGER, J., NOT PARTICIPATING.**

**McDONALD, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶47. I disagree with the majority's decision to affirm the circuit court's grant of summary judgment as to all claims and all defendants. I respectfully concur in part and dissent in part from the majority's opinion.

¶48. In this case, Michael's estate and Amanda filed claims against Deputy Parker and

19

Sheriff Tucker in their individual and official capacities. In their motion for summary judgment, Deputy Parker and Sheriff Tucker raised res judicata and collateral estoppel as defenses against all state-law claims and the defense of immunity against the official-capacity claims brought against them under the MTCA. In granting the defendants' motion for summary judgment, the circuit court held that the defendants were immune from suit, stating in its order, "[T]his Court hereby finds that the defendants' Motion for Summary Judgment is well-taken and should be granted. The defendants are immune from suit under the provision of Miss. Code Ann. §§11-46-9(c) and (d) of the Mississippi Torts Claims Act." Such language indicates that the circuit court only considered summary judgment of the official-capacity claims that would have been subject to the MTCA.

¶49. But in its subsequent final judgment, the circuit court held that "the plaintiffs' complaint is dismissed with prejudice as to *all* claims and *all* defendants . . . ." Thus, without further explanation, the court's final judgment encompassed the malicious tort claims Amanda filed against Deputy Parker and Sheriff Tucker in their individual and official capacities. Because Amanda alleged that Deputy Parker acted maliciously, those claims did not fall under the MTCA. *See* Miss. Code Ann. § 11-46-5(2) (Rev. 2012).[4] Therefore, I

---

[4] Section 11-46-5(2) provides:

For the purpose of this chapter *an employee shall not* be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity *for any conduct* of its employee if the employee's conduct constituted fraud, *malice*, libel, slander, defamation, or any criminal offense other than traffic violations.

disagree with the majority's holding to the extent that it finds that Amanda's individual-capacity claims were correctly dismissed by the circuit court.

¶50. The majority contends that the circuit court did not err in dismissing all claims because the individual-capacity claims are defeated by the doctrine of collateral estoppel as a result of the federal court's finding that Deputy Parker's actions were objectively reasonable. I disagree. Because the individual-capacity state-law claims did not fall under the MTCA, the reckless disregard standard does not come into play, and as a result, the federal court's finding—that Deputy Parker's actions were objectively reasonable—has no bearing on the merits of the individual-capacity claims. Although both Deputy Parker and Sheriff Tucker were immune from liability for the MTCA claims in their official capacities, as previously stated, Amanda's claims of malice did not fall under the MTCA. Thus, Amanda's claims of intentional infliction of emotional distress, assault and battery, and potentially the loss of consortium against Deputy Parker in his individual capacity and Sheriff Tucker, vicariously, may still be viable. *See Bissette v. Univ. of Miss. Med. Ctr.*, 282 So. 3d 507, 516 (¶22) (Miss. Ct. App. 2019) (holding that any legal action against a governmental employee for intentional torts where malice is an element must necessarily proceed against him or her as an individual).

¶51. The majority also reasons that even if collateral estoppel does not apply, Amanda's individual-capacity claims are without merit because Amanda failed to meet her burden of

_____

(Emphasis added).

21

proving the existence of a genuine issue of material fact as to those claims. However, as an appellate court, we cannot, as the majority proposes, make initial findings and determinations that the trial court should have made. *See O'Kelly v. State*, 267 So. 3d 282, 288-89 (¶21) (Miss. Ct. App. 2018) ("We do not make independent resolutions of conflicting evidence. Nor do we reweigh the evidence or make witness-credibility determinations."). Again, the circuit court's final judgment in this case stated that the "plaintiffs' complaint is dismissed with prejudice as to *all* claims and *all* defendants." (Emphasis added). It would have been helpful if the circuit court had made specific findings with regard to its rationale for dismissing Amanda's individual-capacity claims since Deputy Parker was not entitled to immunity on those claims because they did not fall under the MTCA.

¶52. The Mississippi Supreme Court addressed a similar issue in *Elkins v. McKenzie*, 865 So. 2d 1065, 1078-79 (¶¶48-50) (Miss. 2003). In that case, after determining that the trial court failed to make a record of its findings, the supreme court reversed the trial court's grant of summary judgment as to the plaintiff's state-law claims and remanded the matter. *Id*. The supreme court held that the trial court erred by granting summary judgment without making a record of its findings, and the supreme court remanded the matter to the trial court for it to do so. *Id*. at 1079 (¶50). Because the circuit court in this case failed to make a record of its findings on Amanda's individual-capacity claims, as held in *Elkins*, "we [should] not now operate as the trial court to make this initial determination." *Id*. Therefore, I find that the matter should be remanded to the circuit court to determine the viability of any of the

22

individual-capacity claims asserted against the defendants.

¶53.  For these reasons, I dissent in part from the majority's decision to affirm the circuit

court's judgment.

**WESTBROOKS, J., JOINS THIS OPINION.**